**Clarence DAY, Day Oil, Ltd. and Day Exploration, Inc., Plaintiffs,**

v.

**TENNECO, INC. and Tennessee Gas Pipeline Company, a Division of Tenneco, Inc., Defendants.**

**Civ. A. No. J85–1101(B).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Sept. 2, 1988.

Martha W. Gerald, Walker L. Watters, Si M. Bondurant, Alan Cameron, Jackson, Miss., for plaintiffs.

Ernest G. Taylor, Jr., Kathryn H. Hester, C. York Craig, Jr., Jackson, Miss., for defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

Clarence Day requests the entry of a partial summary judgment establishing the liability of Tenneco, Inc. and Tennessee Gas Pipeline Company (Tennessee)[1] for breach of seven gas purchase agreements. Tennessee admits that the contracts are in force and that the contracts contain take-or-pay clauses; however, Tennessee raises several affirmative defenses to payment. The question before the Court is whether any of these defenses establishes issues of fact for trial. The Court holds that Tennessee has not established genuine issues of material fact regarding the defenses and that Day is entitled as a matter of law to a finding that the take-or-pay clauses are enforceable.

Day and Tennessee entered into seven separate gas purchase agreements between 1979 and 1984. Under TGP Contract Nos. 863, 940, 1173, 1172 and 1012, Tennessee is obligated to pay for gas at a base price set forth in the contracts with monthly escala-tions after a specified date. Under TGP Contract Nos. 719 and 1351, Tennessee is obligated to pay for gas at a base price subject to price redetermination made in accordance with the pricing alternatives contained in the terms of the contract.

Tennessee admits that the contracts contain price and take-or-pay provisions. Take-or-pay provisions are standard clauses obligating the pipeline to either take gas or pay for gas tendered for delivery but not taken. The clauses generally grant the pipelines a period of five years to take the gas paid for under the clause. Such clauses have been recognized as common to the gas industry and enforceable:

> The purpose of the take-or-pay clause is to apportion the risk of natural gas production and sales between the buyer and seller. The seller bears the risk of production. To compensate seller for that risk, buyer agreed to take, or pay for if not taken, a minimum quantity of gas. The buyer bears the risk of market demand. The take-or-pay clause insures that if the demand for gas goes down, seller will still receive the price for the Contract Quantity delivered each year.

> The definition of makeup gas contemplates that the buyer may pay twice for the same gas and that the buyer may never receive gas for which he has already paid.

*Universal Resources Corp. v. Panhandle Eastern Pipe Line Co.*, 813 F.2d 77, 80 (5th Cir.1987).

Tennessee does not question the enforceability of take-or-pay provisions in ordinary circumstances. Tennessee asserts, however, that recent changes in the market for natural gas have been so dramatic and unexpected that the take-or-pay clauses in Day's contracts should not be enforceable. Tennessee offers voluminous evidence to show that the unexpected collapse in oil and gas prices and certain changes in federal regulations regarding the sale of gas to consumers combine to make the take-or-pay clauses unfair. The facts which Ten-

---

[1]. Tennessee Gas Pipeline Company is a division of Tenneco, Inc. Both are referred to herein collectively as "Tennessee."

nessee offers to prove may be summarized as follows:

During the late 1970's, there was a severe shortage of natural gas in the United States. The Natural Gas Policy Act of 1978 was enacted in response to the crisis, to deregulate the gas market, and to encourage new production of gas. It was generally assumed at the time that the demand for and the price of gas would remain constant or rise throughout the century. To satisfy the demand for gas, Tennessee and other pipelines began to compete for the purchase of the deregulated, high-cost gas which was beginning to come onto the market. Since demand remained higher than supply, pipelines had to accept producers' terms, and producers demanded contracts with take-or-pay clauses and guaranteed prices. Although some contracts negotiated before 1982 contained market-out clauses, most did not. Pipelines accepted the obligation to purchase high-cost gas on the theory that such contracts, when averaged with older contracts for gas bought at lower, regulated prices, would supply the market demand for gas at a competitive cost. In the winter of 1982–83, however, the market for natural gas began to weaken because of an unseasonably warm winter and an unexpected decline in oil prices worldwide. The availability of cheaper fuel oil cut the demand for natural gas. In the summer of 1984 the Federal Energy Regulatory Commission (FERC) issued Order 380 which relieved pipeline customers of minimum bill obligations, further reducing demand. After the winter of 1984–85, natural gas customers who had been freed from purchase obligations by Order 380 began changing suppliers to acquire cheaper gas. In 1985 FERC executed Order 436 which required pipelines to transport gas from any source to customers on demand. The combination of a collapse in demand and deregulation rendered unmarketable the high priced gas purchased by Tennessee under its contracts with Day.

Tennessee argues that the combination of dramatic collapse in demand for natural gas and deregulation was a risk which was beyond the contemplation of the parties at the time contracts were entered with Day and that their losses on the contracts stand to be so great that they are unfair. Tennessee argues that its performance under the contracts is excused under one or more of the following theories: (1) force majeure, (2) commercial impracticability, (3) mutual mistake, (4) public policy. The Court is of the opinion, however, that none of these defenses is available on the evidence offered by Tennessee and that Day is, accordingly, entitled to partial summary judgment against Tennessee regarding these defenses.

## FORCE MAJEURE

█ Defendants assert that they are entitled to a trial on the issue of force majeure as a defense to the contract. Tennessee bases its defenses on (A) the express language in the contract and (B) Mississippi's force majeure statute, Miss.Code Ann. § 75–2–617 (1972). The contracts themselves contain force majeure clauses which Defendants argue are broader than the statute. These clauses excuse non-performance caused by, among other things, acts of government "when any such Act of Governments directly or indirectly contributes in either party's inability to perform its obligations...." The Mississippi force majeure statute excuses non-performance caused by "Acts of God, or riots, fire, explosion ... inability to obtain ... transportation ... or any cause beyond the control of such party...." Miss.Code Ann. § 75–2–617. The Court is of the opinion, however, that the market collapse and changes in regulation described by Defendants, which occurred over a period of three years from 1982–1985, are not within the meaning of the force majeure provisions either of the contracts or the Mississippi statutes.[2]

---

2. This Court is rendering on this day a Memorandum Opinion and Order in this case on the Motion of Defendants for Partial Summary Judgment in regard to the issue of attorneys'

fees. Attorneys for both sides recognized in their briefs regarding this motion provisions in six of the seven contracts at issue in this law suit providing for application of Texas law. The

Defendants' own expert evidence demonstrates that market-out clauses were intentionally omitted from some contracts in order to secure the deal with certain producers, but they argue that the force majeure clauses were intended to provide for drastic changes in the market similar to the one they have experienced. Defendants have offered extensive evidence to show that the market collapse was not foreseeable at the time the contracts were executed. They argue that since the possibility of such a collapse was not contemplated, the collapse was outside the risk which they agreed to accept when they consented to the contract. The fact that events are unexpected, however, is insufficient by itself to show that an event is a force majeure. Here neither the market collapse nor the new government regulations constituted a force majeure under the terms of either the law of Mississippi or the terms of the contract. The very reason for entering the take-or-pay contracts was to insure payment to the producer in the event of substantial change in the marketplace. Defendants willingly accepted that risk. The fact that the unexpected happened does not excuse performance. Defendants accepted the risk and lost.

## COMMERCIAL IMPRACTICABILITY

█ Defendants argue that their non-performance is excused because of commercial impracticability under Miss.Code Ann. § 75–2–615 which states:

Failure to take delivery ... is not a breach ... if performance as agreed has been made impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made, or by the compliance in good faith with any applicable foreign or domestic governmental regulation....

The Court is of the opinion that the Defendants' expectation that the gas market would continue to be strong was not an assumption within the terms of this sec-

tion. The contract may be deemed commercially impracticable if it can be performed only at excessive and unreasonable costs. *Gulf Oil v. Federal Power Comm'n.*, 563 F.2d 588 (3d Cir.1977). However, a party which has specially warranted performance will not be excused because of a dramatic increase in costs. *Id.* The Court holds that the take-or-pay provisions were in the nature of a warranty. Defendants guaranteed Day a minimum income over a period of years. The risk of a market collapse was slight, as viewed at the time, and Defendants accepted the risk. Performance has become dramatically most costly than Defendants expected, but Defendants have neither alleged nor offered to prove that payment of the take-or-pay provisions are impossible. The Court accordingly believes that the commercial impracticability excuse is inapplicable to this situation.

## MUTUAL MISTAKE

█ Mutual mistake regarding an element of this contract is a defense to performance in Mississippi. *See Jackson v. Sam Finley, Inc.*, 366 F.2d 148 (5th Cir. 1966). The defense does not apply, however, if the risk of the occurrence was recognized and allocated by the contract. *See* 17 Am.Jur.2d Contracts § 145 (1964). Defendants' own evidence shows that they accepted the risk of a change in the market price because they had no reason to believe that a drastic decline in the price was probable. Plaintiff, however, has made no mistake. He did not care one way or the other whether gas prices fell [in regard to these contracts] since the very nature of the contracts was to protect him in such event. The fact that Defendants' predictions proved inaccurate does not create a mutual mistake within the terms of the defense. Defendants have failed to establish the existence of a question of fact for trial and Day is entitled to summary judgment on the mutual mistake defense.

issue of which law is applicable is not raised by any of the parties in regard to this Motion and all parties argue either Mississippi law or federal law. Since the Defendants base some of their positions on Mississippi law, the court will analyze those positions by applying Mississippi law. The remainder of Defendants' positions are based on federal law and the Court is faced with no *Erie* problems regarding those positions.

(removed)

## PUBLIC POLICY

Defendants argue that the take-or-pay provisions are unenforceable as a matter of public policy. In order to declare a contract unenforceable as contrary to public policy in Mississippi, there must be a showing that the contract is prohibited by the express terms or the fair implication of a statute or a judicial decision. *Simons v. City of Columbus,* 593 F.Supp. 876 (N.D. Miss.1984). The standard take-or-pay clause has been held to be "unambiguous, common to the gas industry and fully enforceable." *Universal Resources Corp. v. Panhandle Eastern Pipe Line Co.,* 813 F.2d 77, 80 (5th Cir.1987). Defendants have cited no statute or judicial decision which is violated by the enforcement of such clauses. They argue that the clauses are contrary to public policy because they may raise the price of gas for consumers. Even if Defendants' allegations could be established, the take-or-pay clause would not for that reason violate public policy. Accordingly, Day is entitled to summary judgment on Defendants' public policy defense.

## CONCLUSION

For the foregoing reasons, the Court concludes that Defendants have failed to establish the existence of genuine issues of fact for trial regarding their defenses to the liability issue under the take-or-pay clauses. The Court concludes that Day is entitled to partial summary judgment establishing that the take-or-pay clauses are valid and enforceable.