# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

============================

## ON MOTION FOR REHEARING

============================

### NO. 03-05-00097-CV

**Railroad Commission of Texas and Dos Republicas Resources Co., Inc., Appellants**

**v.**

**Theodosia Coppock, Juanita Alvarado, Guadalupe Davila, and Kickapoo Traditional Tribe of Texas, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. GN401227, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

Our opinion and judgment issued on December 29, 2006, are withdrawn, and the following opinion is substituted.

Dos Republicas Resources Co., Inc. ("Dos Republicas") asked the Railroad Commission of Texas (the "Commission") to extend its surface coal mining permit under the provisions of the Texas Surface Coal Mining and Reclamation Act codified in the natural resources code, but Theodosia Coppock, Juanita Alvarado, Guadalupe Davila, and Kickapoo Traditional Tribe of Texas (the "appellees") opposed the extension. Ultimately, the Commission granted the extension, and the appellees appealed the Commission's decision. The district court concluded that the Commission's basis for granting the extension, namely the lack of a market for Dos Republicas

to sell its coal, was not authorized under the natural resources code.  *See* Tex. Nat. Res. Code Ann. § 134.072 (West 2001).  Dos Republicas and the Commission appeal the district court's judgment, and we will reverse the court's judgment.

## BACKGROUND

In 1992, Dos Republicas applied to the Commission for a permit to allow it to engage in coal mining on a 2700-acre tract in Eagle Pass, Texas, and the Commission approved the permit in 1994.  However, Dos Republicas did not request that the permit be issued at that time.

For years, Dos Republicas attempted to enter into an agreement to sell its coal to the Comision Federal de Electricidad ("CFE"), a state-owned electricity provider in Mexico that operates two coal-fired plants near Eagle Pass.  In 1999, CFE became concerned about the financial security of the mining company that had been its coal supplier.  As a result, it alerted Dos Republicas that, in early 2000,  it would be issuing a request for proposals asking companies to submit bids offering to supply CFE with coal and asked Dos Republicas to issue a bid.  To ensure that it would have a supply when necessary, Dos Republicas asked the Commission to issue the permit it had previously approved, and the Commission issued the permit in April 2000.

Due to a number of political changes and pressure from various interested parties, CFE never issued its request for proposals.  Employees from mines in Mexico complained that importing coal from Texas might eliminate their jobs.  In addition, during this time, the governing political party in Mexico changed, and the leaders of CFE were replaced.

Dos Republicas continued its efforts to enter into an agreement with CFE, and, in 2001, CFE again indicated that it would issue a request for proposals.  However, as had happened

2

previously, no request was ever issued. Instead, CFE entered into a long-term supply contract with a Mexican mining company, Coahuila Industrial Minera ("Coahuila").

Prior to and after CFE entered into a contract with Coahuila, Dos Republicas unsuccessfully attempted to find other market options for selling its coal. Even though Dos Republicas asked the Commission to issue it a mining permit, it never began mining coal at the Eagle Pass mine and, eventually, filed an application with the Commission seeking to terminate its permit. Although Dos Republicas asked that its permit be terminated, the natural resources code also contains an early termination provision mandating that a mining permit will expire within three years of its issuance if the permit holder has not begun "surface coal mining" operations by that date. Tex. Nat. Res. Code Ann. § 134.072(a);[1] *see also id.* § 134.004(20) (West 2001) (definition of "surface coal mining operations"). Dos Republicas filed its application to terminate its permit shortly before the three-year termination date.

Just before the three-year termination deadline passed, Coahuila contacted Dos Republicas and indicated that it was interested in purchasing the Eagle Pass mining operation. Consequently, Dos Republicas filed a request to withdraw its application to terminate the permit and also filed a request to extend its permit beyond the three-year deadline. The natural resources code

---

[1] Subsection 134.072(a) reads as follows:

> A permit terminates if the permit holder has not begun the surface coal mining operation covered by the permit on or before the third anniversary of the date on which the period for which the permit is issued begins.

Tex. Nat. Res. Code Ann. § 134.072(a) (West 2001).

3

allows the Commission to grant "reasonable extensions" if it is shown that the extensions are necessary because of:

> (1) litigation that precludes the beginning of operations or threatens substantial economic loss to the permit holder; or
>
> (2) conditions beyond the control and without the fault or negligence of the permit holder.

*Id.* § 134.072(b).[2]

---

[2] The administrative rule interpreting section 134.072 contains nearly identical language. It provides:

> (b) Automatic termination shall occur as follows:
>
> > (1) a permit shall terminate, if the permittee has not begun the surface coal mining and reclamation operation covered by the permit within 3 years of the issuance of the permit;
> >
> > (2) the Commission may grant reasonable extensions of time for commencement of these operations, upon receipt of a written statement showing that such extensions of time are necessary, if:
> >
> > > (A) litigation precludes the commencement or threatens substantial economic loss to the permittee; or
> > >
> > > (B) there are conditions beyond the control and without the fault or negligence of the permittee

16 Tex. Admin. Code § 12.219(b) (2006). Because the rule is nearly identical to the statute, we will limit our discussion to the statute.

The Commission referred the matter to a hearings examiner. Coppock, a landowner near the Eagle Pass property, opposed the extension.[3] She claimed that, because the three-year deadline had passed by the time of the hearing, the Commission had no authority to grant an extension. Alternatively, she argued that the Commission should deny the extension because the conditions allowing for an extension found in section 134.072 were not satisfied. Specifically, she asserted that the absence of a market in which Dos Republicas could sell its coal could not justify an extension.

The hearing examiner concluded that the Commission had jurisdiction to consider the request for an extension because the request for an extension was filed prior to the three-year deadline. Further, she concluded that the Commission should grant the extension because Dos Republicas's failure to begin mining was due to the absence of a market for the coal and that the market condition was "beyond the control and without the fault or negligence" of Dos Republicas. The Commission adopted the examiner's proposal for decision and granted the extension.

The appellees appealed the Commission's order to the district court. *See* Tex. Gov't Code Ann. § 2001.171 (West 2000) (person who has exhausted all administrative remedies and is aggrieved by final agency decision is entitled to judicial review). In its judgment, the district court concluded that the Commission had jurisdiction over the extension request because the Commission has authority over a request as long as it is filed within three years of the permit's issuance.

_____

[3] Coppock owns a cattle ranch near Dos Republicas's proposed mine site. She opposed the extension because she was concerned about how mining operations might affect the groundwater under her ranch. The remaining appellees— Juanita Alvarado, Guadalupe Davila, and Kickapoo Traditional Tribe of Texas—did not intervene until after the hearing examiner's proposal for decision was issued.

5

However, the court also concluded that "[s]ubsection 134.072(b) does not authorize the Commission to grant an extension based upon the absence of a market or other economic, political, or social conditions that are beyond the control of and without the fault or negligence of the permit holder." Dos Republicas and the Commission appeal the district court's judgment.

## STANDARD OF REVIEW

In addressing the issues raised in this appeal by the appellants and the appellees, we must necessarily construe the relevant provisions of the natural resources code. Statutory construction is a question of law, which we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In determining the meaning of a statute, our primary purpose is to determine the legislature's intent when enacting the statute, and we begin with the language used in the statute. *Id.* Every word in a statute is presumed to have been used for a purpose and every word excluded is presumed to have been excluded for a purpose. *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995). Further, we look to the entire act and do not look at a single provision isolated from the remainder of the act. *Watts v. City of Houston*, 126 S.W.3d 97, 100 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *see also* Tex. Gov't Code Ann. § 311.021(2) (West 2005) (presume that entire statute was meant to be effective). We should not adopt a construction of a statute that will render the statute meaningless or lead to absurd results. *See Watts*, 126 S.W.3d at 100; *see also* Tex. Gov't Code Ann. § 311.021(3) (West 2005) (in construing statutes, we presume that just and reasonable result was intended). Finally, the construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration so long as the construction is reasonable and does not contradict the plain language of the statute. *Tarrant*

6

*Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993); *Anderson-Clayton Bros. Funeral Home, Inc. v. Strayhorn*, 149 S.W.3d 166, 178 (Tex. App.—Austin 2004, pet. denied) (even if there are other reasonable interpretations, we will accept agency's construction of statute if it is consistent with language and purpose of statute); *see also* Tex. Gov't Code Ann. § 311.023(6) (West 2005) (in construing statutes, courts may consider administrative construction of statute regardless of whether statute is considered ambiguous). This is particularly true when the statute involves a complex subject matter. *Buddy Gregg Motor Homes v. Motor Vehicle Bd.*, 156 S.W.3d 91, 99 (Tex. App.—Austin 2004, pet. denied). However, for nontechnical questions of law and other questions not lying within an agency's expertise, courts do not defer to an agency's interpretation. *Id.*

## DISCUSSION

On appeal, the Commission and Dos Republicas contend that the district court erred when it reversed the Commission's order granting Dos Republicas's extension because the extension was authorized by the natural resources code. In response, the appellees assert that the extension was not authorized by statute and that the Commission did not have the authority to grant the extension after the three-year deadline.

**The Commission Possessed Authority to Address Dos Republicas's Extension Request**

On appeal, the appellees assert that the Commission lacked the authority to grant the permit extension because the three-year deadline specified in the statute had expired. Before we address this issue, we note that there is some question about whether the appellees may make this cross-claim without first filing a notice of appeal. The Commission and Dos Republicas contend

7

that the appellees may not bring this cross-claim on appeal because they failed to file a notice of appeal. *See* Tex. R. App. P. 25.1 (party who seeks to alter trial court's judgment must file notice of appeal), 26.1 (specifying deadlines for filing notices of appeal). The appellees, on the other hand, insist that this issue may be considered on appeal. Specifically, they assert that it was unnecessary for them to file a notice of appeal because they are not seeking more favorable relief than that granted by the district court. *See First Gen. Realty Corp. v. Maryland Cas. Co.*, 981 S.W.2d 495, 503 (Tex. App.—Austin 1998, pet. denied) (because appellees' arguments did not ask for relief greater than that granted by trial court, appellees were not required to file notice of appeal). Rather, they argue that they are simply seeking to affirm the final judgment of the district court and that they raise this issue merely as an alternative ground for affirming the district court's judgment. *See Helton v. Railroad Comm'n*, 126 S.W.3d 111, 119-20 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (noting distinction between cross-points that require separate notice of appeal and claims that merely seek to raise alternate grounds opposing recovery by appealing party). In the interests of justice, we will address their argument.

The appellees insist that Dos Republicas's permit terminated *automatically* on April 11, 2003, because Dos Republicas had not commenced surface mining and had not *obtained* an extension by that date. In support of this assertion, the appellees contend that nothing in the natural resources code provides that requesting an extension within the three-year deadline will toll the termination deadline or allows for a conditional extension pending a final determination by the Commission. In response, the Commission argues that it may grant an extension request after the three-year deadline as long as the request was filed within the three-year cutoff.

8

The Commission's interpretation of the statute is consistent with the language of the statute. Nothing in the natural resources code necessitates that the Commission rule on an extension request before the three-year deadline passes in order for the extension to be effective. *See* Tex. Nat. Res. Code Ann. § 134.072. The lack of a Commission deadline for issuing its decision is instructive given that the code provides specific deadlines for agency action in other contexts. For example, section 134.080 of the code mandates that the Commission issue a decision regarding a permit revision filed by a permit holder within 90 days of receiving the application for revision. *See id.* § 134.080 (West 2001); *see also* Tex. Gov't Code Ann. § 2001.146(c) (West 2000) (agency must act on motion for rehearing within 45 days or motion is overruled by operation of law).

Moreover, the code does not mandate that a permit holder file an extension request within a given time prior to the termination date in order to allow the Commission to fully consider the request. The lack of a specific deadline by which a permit holder must file a request is noteworthy when looking at other code provisions. The section concerning permit renewals explicitly provides a deadline by which an applicant must file a permit renewal application that is prior to the permit expiration date. Specifically, section 134.078 provides as follows:

> Application for permit renewal must be made not later than the 120th day before the date the existing permit expires.

Tex. Nat. Res. Code Ann. § 134.078 (West 2001); *see also* 16 Tex. Admin. Code § 12.106(b)(2) (2006) (requiring permit holder to file permit renewal 180 days before permit expires), (b)(3) (2006) (requiring permit holder to file permit revision application 180 days before it expects to revise its operations). The absence of a similarly worded deadline in the extension context supports the

9

Commission's interpretation, which allows for the filing of an extension request up to the three-year termination deadline. *See Laidlaw Waste Sys., Inc.*, 904 S.W.2d at 659 (presume that every word omitted was purposefully excluded).

Furthermore, if the appellees' interpretation of the statute were correct, applicants would have the onerous task of estimating how far in advance they would need to file an extension request in order to allow the Commission time to fully review the application and issue its decision prior to the expiration of the three-year deadline. In addition, the appellees' construction would effectively eliminate extensions for events occurring between the time a permit holder should file an extension request to ensure that a timely decision is issued and the three-year termination date. Given that the possible reasons for requesting an extension might vary in complexity, the amount of time necessary for full consideration of a request will vary, the extension may or may not be opposed, hearings may or may not be scheduled on the proposed extension, and there is no statutory deadline for the Commission releasing its decision, this interpretation would lead to unfair results. For example, under the appellees' interpretation, a permit holder who files for an extension just prior to the termination deadline would receive an extension as long as the Commission issued the extension by the three-year deadline, whereas a permit holder who files a request for an extension well in advance of the deadline would not receive an extension if the Commission is unable to grant the extension by the cut-off date.[4] We cannot adopt an interpretation that would lead to such arbitrary results. *See Watts*, 126 S.W.3d at 100.

_____

[4] In this case, almost a year passed between Dos Republicas's filing for an extension and the Commission's decision granting the extension.

This construction is also supported by the effect of the extension provisions. *Cf.* Tex. Gov't Code Ann. § 311.023(1) (West 2005) (in interpreting statute, courts may consider "object sought to be attained"). Section 134.072 terminates a permit, regardless of the length of the permit's effective term, within three years of the permit's issuance if the permit holder has not begun mining operations. Tex. Nat. Res. Code Ann. § 134.072; *see also id.* § 134.071 (West 2001) (allowing Commission to issue permits with terms of five years or more). Given that section 134.072 can shorten the effective term of a mining permit by imposing a three-year deadline, the Commission's interpretation that a request for an extension is effective if filed within the three-year deadline seems logical and equitable.

For all the reasons previously given, we conclude that the Commission's interpretation of the statute is consistent with section 134.072 and further conclude that the Commission had the authority to grant Dos Repulicas's extension request even though the three-year termination date had passed. Accordingly, we affirm that portion of the district court's judgment.

**The Statute Allows Extension Requests to be Granted for Market Reasons**

In their only issue on appeal, the Commission and Dos Republicas contend that the district court erred by reversing the Commission's order. Specifically, they argue that the absence of a market for the coal present at the Eagle Pass mine was a condition outside of Dos Republicas's control that occurred "in the absence of any fault or negligence" on behalf of Dos Republicas and that, therefore, the Commission was authorized by statute to grant the extension.[5]

---

[5] Whether the Commission's order was supported by substantial evidence is not at issue in this case. For this reason, we focus solely on whether the Commission exceeded its statutory authority by issuing the extension.

The appellees, on the other hand, contend that the district court correctly concluded that the Commission was not authorized to issue an extension to Dos Republicas. First, the appellees argue that the language of subsection 134.072(b)(2), which is the subsection relevant in this appeal, acts as a *force majeure* provision that prohibits an extension unless the permit holder has physically been prevented from commencing operations due to "conditions beyond its control and without its fault or negligence." Further, the appellees contend that Dos Republicas was not actually prevented from mining and, therefore, insist that Dos Republicas should not have been given an extension for its conscious choice not to begin mining.

We disagree with the appellees' assertion. There is no requirement listed in 134.072 that a permit holder must be "physically" prevented from engaging in mining operations to obtain an extension. Further, we have been unable to find any case applying the doctrine of *force majeure* to the issuance of a permit by a state regulatory authority. The doctrine is designed to protect parties to a contract and excuses a party's nonperformance because of events outside the control of the parties. *See Black's Law Dictionary* 445 (abridged 6th ed. 1991); *see also Perlman v. Pioneer Ltd. P'ship*, 918 F.2d 1244, 1248 n.5 (5th Cir. 1990) (*force majeure* describes particular type of event, which may excuse performance under contract). The scope and applicability of the doctrine is dependent upon the terms specified in a contract. *See Zurich Am. Ins. Co. v. Hunt Petroleum (AEC), Inc.*, 157 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see also Perlman*, 918 F.2d at 1248 n.5 (should look to language of contract to determine parties' intent concerning whether event complained of excuses performance); *Sun Operating Ltd. P'ship v. Holt*, 984 S.W.2d 277, 282-83 (Tex. App.—Amarillo 1998, pet. denied) (much of historic meaning of phrase *force majeure* is gone and, therefore, scope and application of doctrine is "utterly dependent upon the terms of the

12

contract in which it appears"); 30 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 77:31 (4th ed. 1990 & Supp. 2004) (specific language of clause indicates what events will excuse performance and typical clause states that party's performance is subject to "acts of God, war, government regulation, terrorism, disaster, strikes . . . civil disorder, curtailment of transportation facilities, or any other emergency beyond the parties control").

In addition, the cases the appellees refer to in support of their assertion that, under the doctrine of *force majeure*, market conditions cannot justify a permit extension are distinguishable. The appellees refer to *Day v. Tenneco, Inc.*, 696 F. Supp. 233 (S. D. Miss. 1988); *Huffines v. Swor Sand & Gravel Co., Inc.*, 750 S.W.2d 38 (Tex. App.—Fort Worth 1988, no writ); and *Valero Transmission Co. v. Mitchell Energy Corp.*, 743 S.W.2d 658 (Tex. App.—Houston [1st Dist.] 1987, no writ), for the proposition that unfavorable market conditions cannot justify a permit extension under subsection (b)(2). Although the courts in these cases did conclude that poor market conditions do not excuse a party's obligation to perform under a contract, *see Day*, 696 F. Supp. at 236; *Huffines*, 750 S.W.2d at 40; and *Valero*, 743 S.W.2d at 663, this case does not involve a contractual dispute or a breach of contract claim. Furthermore, in two of the cases cited, *Day* and *Valero*, the contracts at issue specifically contained a *force majeure* clause that the courts were required to interpret: there is no comparable provision in this case.[6]

---

[6] The appellees also assert that in *Day v. Tenneco, Inc.*, the Mississippi court concluded that market conditions cannot be used to excuse a party's performance under a statute. 696 F. Supp. 233, 235-36 (S. D. Miss. 1988). The statute listed various events that would excuse a party's nonperformance under a contract and included a catch-all phrase for events "beyond the control of such party." *See id*. at 235-36 (citing former Miss. Code Ann. § 75-2-617 (1972)). However, as discussed previously, this case does not involve a contract dispute, and Dos Republicas is not attempting to avoid an obligation by invoking a statute excusing performance under a contract.

Second, the appellees analogize the effect of Dos Republicas's failure to begin mining operations to the effect of a lessee's failure to undertake physical efforts to drill under the terms of an oil and gas lease. Specifically, they contend that, under an oil and gas lease, a lessee's failure to engage in physical activity on the leased property will terminate the lease at the end of the lease's primary term[7] and will not allow for renewal, and they insist that a similar result should apply here. *See* Smith & Weaver, *Texas Law of Oil & Gas* § 4.5 (2000) ("A lessee cannot safely rely upon activities which do not involve actual physical activity on the land such as . . . applying . . . for a drilling permit . . . . [T]he reported cases speak in terms of actual physical contact with the leased premises.").

However, the appellees have not referred us to cases holding that a permit holder's failure to engage in mining activities is equivalent to a lessee's failure to drill under an oil and gas lease, and we see no reason to adopt such a rule. The circumstances and expectations surrounding the issuance of a permit are remarkably different than those present during the formation of an oil and gas lease. Unlike a mining permit, an oil and gas lease involves two parties to an agreement, not a single party and a regulatory agency. Because the issuance of a permit by the Commission does not involve two parties entering into a contract for mutual economic benefit, the need for a termination due to non-production is not as pressing because the Commission does not receive an economic benefit from a mining company corresponding to the amount of coal mined. *Cf. id.* (if lessee under oil and gas lease does not begin drilling, it is obligated to pay lessor delay rental).

---

[7] A primary term is "a period of time at the end of which the [leasehold] estate granted will terminate but which estate may be extended by some other provision, usually one for production." *Fox v. Thoreson*, 398 S.W.2d 88, 91 (Tex. 1966); *see also Eastern Energy, Inc. v. SBY P'ship*, 750 S.W.2d 5, 6 (Tex. App.—Houston [1st Dist.] 1988, no writ) ("primary term of the lease is the maximum period of time for which the lessee can maintain lease rights without drilling").

14

Further, the economic effects of a coal mining company's actions are only one factor for the Commission to consider when issuing, extending, or terminating a permit; as highlighted by the appellees, the Commission is also charged with considering, among other things, the potential environmental effects from coal mining and the effects on neighboring landowners. *See* Tex. Nat. Res. Code Ann. § 134.003 (West 2001).

Third, the appellees urge that, because Dos Republicas was aware that it did not have a market established when it filed for a permit in 1994 and was aware of the social and political instability present in Mexico when it asked for the permit to be issued, Dos Republicas assumed those market risks knowing that it was obligated to begin mining operations within three years or lose the permit. Accordingly, they contend that the permit should not be extended because the potential market problems were foreseeable.

We disagree with the appellees' assertion that the fact that the event was foreseeable bars invocation of the extension provision. There is no requirement in section 134.072 mandating that conditions justifying a permit extension must have been unforeseeable to the permit holder. *See id.* § 134.072. Moreover, many of the conditions that the appellees insist would justify a permit extension will no doubt be foreseeable to a certain extent, including natural disasters and individuals filing suit against the company.

Fourth, the appellees note that subsection 134.072(b)(2) does not specifically authorize an extension for economic reasons but note that subsection 134.072(b)(1) does allow for extension due to economic concerns. Subsection 134.072(b)(1) allows the Commission to grant an extension if the permit holder is involved in "litigation that precludes the beginning of operations or threatens *substantial economic loss*." *Id.* § 134.072(b)(1) (emphasis added). The appellees insist

15

that if potential economic loss was a factor to be considered under subsection (b)(2), the legislature would have incorporated that language into the section. *Cf. Laidlaw Waste Sys., Inc.*, 904 S.W.2d at 659 (Tex. 1995) (when legislature employs term in one section of statute and excludes it from another, term should not be implied into section it was excluded from).

We cannot adopt the appellees' construction of section 134.072. Although subsection 134.072(b)(2) does not specifically list "economic conditions" or "the lack of a market" as permissible reasons justifying a permit extension, the subsection does not list any specific situation justifying an extension. Instead, the subsection uses very broad language authorizing the Commission to grant an extension when it believes an extension is necessary due to "conditions beyond the control and without the fault or negligence of the permit holder." Tex. Nat. Res. Code § 134.072(b)(2); *see also Webster's Seventh New Collegiate Dictionary* 235 (7th ed. 1973) ("condition" means "a restricting or modifying factor"). On its face, this language is broad enough to justify the Commission's extension for market conditions that are not caused by the permit holder.

Further, we disagree with the appellees' contention that the inclusion of the phrase "substantial economic loss" in subsection 134.072(b)(1) and its exclusion in subsection 134.072(b)(2) indicates the legislature's intent that economic conditions, including the lack of a viable coal market, cannot be used to justify a permit extension. *See* Tex. Nat. Res. Code Ann. § 134.072(b); *see also Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 274 (Tex. 1999) ("doctrine of *expressio unius est exclusio alterius* is simply an aid . . . . [and] [a]s a rule of reason and logic, it should not be mechanically applied to compel an unreasonable interpretation"). The subsections apply in different contexts. Subsection (b)(1) applies only to situations where the permit holder is involved in litigation that either precludes the beginning of mining or threatens economic

16

loss to the permit holder regardless of whether the litigation was initiated due to some fault of the permit holder. Subsection (b)(2) applies when conditions, which are not caused by the permit holder, are present and warrant an extension. Unlike subsection (b)(1), which is expressly limited to instances where the permit holder is involved in some type of litigation, subsection (b)(2) applies to a broader number of situations and provides no express limitation on its applicability except that the permit holder cannot be the cause of the condition resulting in the failure to mine. Due to the distinct situations in which these statutes apply, we believe that the legislature's failure to include the phrase "economic loss" in subsection (b)(2) is no indication that the lack of a market cannot be used to justify an extension. The legislature specified that economic conditions are permissible considerations when determining whether to grant an extension under the first part of subsection 134.072(b). We can discern no reason to exclude economic conditions as permissible factors for the Commission to consider when determining whether to grant an extension under the more broadly written second part of subsection 134.072(b).

Finally, the appellees refer to federal case law and to the legislative history accompanying the federal counterpart to the Texas Surface Coal Mining and Reclamation Act as support for the proposition that market conditions cannot justify an extension. First, the appellees refer to *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083 (6th Cir. 1981). In *Shawnee*, the Office of Surface Mining, Reclamation, and Enforcement (the "Office") concluded that Shawnee was in violation of the Act because it had stockpiles of coal products that released toxic runoff and ordered Shawnee to comply with the Act and its accompanying regulations. The district court granted an injunction in favor of Shawnee preventing enforcement of the Office's orders, but the Sixth Circuit reversed because Shawnee had not exhausted its administrative remedies prior to filing suit.

17

*Shawnee Coal Co.*, 661 F.2d at 1092. During a subsequent administrative proceeding, Shawnee argued that it was unable to comply with the Office's orders because it could not sell the stockpiled coal products due to a depressed market. *See* Coalex Report 305 *available at* http://www.osmre.gov/coalex/coalex305.htm (last modified Mar. 24, 1999). The administrative law judge concluded that Shawnee had to either comply with the regulations in question or no longer conduct operations. *Id.*

The appellees' reliance on this case is misplaced. Shawnee was ordered by the Office to comply with an environmental regulation relating to surface coal mining and subsequently sought injunctive relief from having to comply with the order. Dos Republicas has not failed to comply with nor has it been ordered to comply with a regulation. Further, it is not seeking injunctive relief from compliance with an environmental regulation. Rather, it is attempting to extend the termination date of its mining permit, which is an action authorized by the natural resources code.

Next, the appellees refer to the legislative history accompanying the Surface Mining Control and Reclamation Act. Like the Texas statute, the federal statute also provides that a permit will terminate within three years if no mining activity is undertaken but allows a permit to be extended for reasons similar to those articulated in section 134.072. *See* 30 U.S.C.A. § 1256(c) (West 1986); *see also id.* § 1253 (West 1986 & Supp. 2006) (states may obtain jurisdiction over mining if states develop program capable of implementing Act). The Senate Committee's 1977 analysis of the act recognized that permits may be issued and renewed without operations being undertaken and specified that one of the reasons for the three-year deadline is to ensure "that no one will be locked into outdated reclamation requirements" that were in effect when the permit was issued. S. Rep. No. 95-128, at 74 (1977). Based on the federal legislative history's emphasis on

18

maintaining current environmental reclamation standards and the fact that the Texas reclamation regulations in effect when Dos Republicas first obtained its permit are different from the regulations in effect now, the appellees insist that Dos Republicas's permit should not have been extended for economic reasons. *Cf.* 30 U.S.C.A. § 1201(d) (expansion of coal mining requires establishment of "appropriate standards to minimize damage to the environment"), (k) (West 1986) (Act is necessary to "mitigate adverse environmental effects").

However, the fact that the federal statute was enacted with a focus on implementing current environmental reclamation standards does not mandate a conclusion that a permit cannot be extended for market reasons under the Texas statute. If anything, the focus on reclamation standards indicates the need for agency expertise in determining what standards to enforce and whether a permit should be extended. Furthermore, the administrative code authorizes the Commission to review an existing permit and modify the permit's provisions to ensure compliance with the Surface Mining and Reclamation Act and the relevant administrative code provisions. *See* 16 Tex. Admin. Code § 12.225 (2006). Therefore, the Commission can compel a permit holder to comply with more recent reclamation requirements prior to the permit's termination.

Dos Republicas and the Commission's assertion that the Commission may consider market conditions when determining whether to grant an extension is also supported by the broad authority the legislature bestowed upon the Commission. The natural resources code specifies that the Commission has been granted exclusive jurisdiction over surface coal mining and reclamation activities, has been charged with enforcing the relevant portions of the code, and has been given the authority to issue rules pertaining to mining and reclamation activities that are consistent with the code. *See* Tex. Nat. Res. Code Ann. §§ 134.011 (Commission given broad powers, including power to adopt rules, issue and revoke permits, conduct hearings, issue orders requiring miners to take

19

certain actions, and order cessation of mining activities), 134.012(a)(1) (Commission has exclusive jurisdiction), 134.013 (West 2001) (Commission required to adopt rules relating to surface coal mining and reclamation), 134.161-.181 (West 2001) (enforcement powers of Commission). It has also been specifically charged with determining whether a permit extension should be granted. Moreover, the two types of circumstances described by section 134.072 as justifying an extension are broadly written. Accordingly, the Commission's interpretation of section 134.072 is entitled to judicial respect. *See Hammack v. Public Util. Comm'n of Tex.*, 131 S.W.3d 713, 723 (Tex. App.—Austin 2004, pet. denied); *see also Moore*, 845 S.W.2d at 823.

Furthermore, the appellees' arguments ignore the need for agency expertise in determining whether a permit extension should be granted. *See Hammack*, 131 S.W.3d at 723 (legislature bestows powers upon agency with idea that its goals will be more effectively realized by employing agency's "specialized judgment, knowledge, and expertise"). The code specifies that the Commission "may" grant an extension and further states that, in determining whether to grant an extension, the Commission must consider whether the permit holder's failure to mine is the result of events beyond the control of the permit holder and must determine whether granting the extension is "necessary." *See* Tex. Nat. Res. Code Ann. § 134.072(b)(2); *see also* Tex. Gov't Code Ann. § 311.016(1) (West 2005) (word "may" creates discretionary authority). If the Commission determines that an extension is necessary, the agency must also determine a "reasonable" extension time. Tex. Nat. Res. Code Ann. § 134.072(b). These determinations necessarily involve an assessment of the circumstances surrounding the permit holder's activities and knowledge of the factual situations that might justify a permit extension. *Cf. State v. Public Util. Comm'n*, 883 S.W.2d 190, 195 n.6 (Tex. 1994) (determination of whether something should be considered capital

or expense should be "left to the agency created to centralize expertise in this area and granted broad authority concerning just such matters"). Accordingly, deference to the Commission's expertise regarding the conditions warranting an extension is appropriate.

For all the reasons previously given, we conclude that the Commission's interpretation of section 134.072 as allowing for a permit extension due to unfavorable market conditions "beyond the control and without the fault or negligence of the permit holder" is consistent with the plain language of the statute. Accordingly, we conclude that the Commission did not exceed its authority when it granted Dos Republicas's extension request because of unfavorable market conditions. Therefore, we sustain Dos Republicas and the Commission's issue on appeal.

## CONCLUSION

Having concluded that the Commission had the authority to issue Dos Republicas's extension and having sustained Dos Republicas and the Commission's issue on appeal, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

David Puryear, Justice

Before Justices Patterson, Puryear and Smith*

Reversed and Remanded on Motion for Rehearing

Filed: February 1, 2007

* Bea Ann Smith, Justice (retired), Third Court of Appeals, sitting by assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).