

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00296-CV

STEVEN JEFFREY JOHNSON                                    APPELLANT

V.

MICHELE JEAN JOHNSON                                       APPELLEE

------------

### FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

----------

## I.      Introduction

In one issue, Appellant Steven Jeffrey Johnson appeals the trial court's summary judgment and order in favor of Appellee Michele Jean Johnson.  We affirm.

---

[1]See Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

On February 3, 2010, pursuant to the parties' "Agreement Incident to Divorce," Steven, CEO of Cano Petroleum, Inc., executed a promissory note (the Note) in favor of Michele in the amount of $460,000, to mature on April 13, 2010.[2] At the same time, the parties executed a "Security Agreement with Collateral Pledge and Appointment of Escrow Agent" (the Security Agreement) listing 92,000 shares of Cano stock as security for the Note.[3]

In May 2010, after Steven defaulted, Michele brought suit to collect on the Note's overdue principal. Steven answered with a general denial and asserted two affirmative defenses: (1) excuse from payment, because the Security Agreement "modified, supplemented, or nullified" the Note; and (2) impossibility, because at the time the Note matured, a mandatory stock-transaction blackout period associated with Cano's proposed merger with another firm rendered performance impossible. On June 22, 2010, Michele filed a motion for summary judgment. Steven responded, reiterating the affirmative defenses set out above. After a hearing, the trial court granted Michele's motion and issued an order awarding Michele the principal—$460,000—plus pre- and post-judgment interest

---

[2]Although executed in February 2010, the Note was originally drafted on April 13, 2007, and called for quarterly interest payments on the principal beginning on May 1, 2007.

[3]The Note and Security Agreement are appended to the end of this opinion.

2

at a rate of five percent per annum computed from April 13, 2010. This appeal followed.

### III. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

If the defendant wishes to assert an affirmative defense to the motion, he must urge the defense in his response and present sufficient evidence to create

3

a fact issue on each element of the defense. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 95 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Beathard Joint Venture v. W. Houston Airport Corp.*, 72 S.W.3d 426, 434 (Tex. App.—Texarkana 2002, no pet.); *Jones v. Tex. Pac. Indem. Co.*, 853 S.W.2d 791, 795 (Tex. App.—Dallas 1993, no writ)). The non-movant is not required to prove the affirmative defense as a matter of law; raising a fact issue is sufficient to defeat summary judgment. *See Anglo-Dutch Petroleum*, 193 S.W.3d at 95; *see also Brownlee*, 665 S.W.2d at 112.

## IV. Applicable Law

### A. Collection of a Promissory Note

To collect on a promissory note, a plaintiff must establish: (1) that the note exists; (2) that the defendant signed the note; (3) that the plaintiff is the owner and holder of the note; and (4) that a certain balance is due and owing on the note. *Cadle Co. v. Regency Homes, Inc.*, 21 S.W.3d 670, 674 (Tex. App.—Austin 2000, pet. denied); *see also Clark v. Dedina*, 658 S.W.2d 293, 295–96 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd).

### B. Business and Commerce Code Section 3.117

Business and commerce code section 3.117, titled "Other Agreements Affecting Instrument," states in relevant part that

> the obligation of a party to an instrument to pay the instrument may be modified, supplemented, or nullified by a separate agreement of the obligor and a person entitled to enforce the

4

instrument, if the instrument is issued or the obligation is incurred in reliance on the agreement or as part of the same transaction giving rise to the agreement. To the extent an obligation is modified, supplemented, or nullified by an agreement under this section, the agreement is a defense to the obligation.

Tex. Bus. & Com. Code Ann. § 3.117 (West 2002). "The separate agreement might be a security agreement . . . *that contradicts the terms of the instrument*." *Id.* § 3.117 cmt. 1 (West Supp. 2010) (emphasis added).

Additionally, where two or more instruments, executed contemporaneously or at different times, pertain to the same transaction, the instruments will be read together, even though they do not expressly refer to each other. *Bd. of Ins. Comm'rs v. Great S. Life Ins. Co.*, 150 Tex. 258, 267, 239 S.W.2d 803, 809 (1951); *see also Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (stating that it is "well-established law that instruments pertaining to the same transaction may be read together to ascertain the parties' intent").

## C. Impossibility of Performance

There are two general types of impossibility: (1) objective, and (2) subjective. *Walston v. Anglo-Dutch Petroleum (Tenge) L.L.C.*, No. 14-07-00959-CV, 2009 WL 2176320, at *6 n.2 (Tex. App.—Houston [14th Dist.] July 23, 2009, no pet.) (mem. op.); *Janak v. FDIC*, 586 S.W.2d 902, 906–07 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ). Objective impossibility relates solely to the nature of the promise. *See Janak*, 586 S.W.2d at 906–07. Something is

5

objectively impossible if "the thing cannot be done," such as an inability "to perform the promise to settle [a] claim by entering an agreed judgment in the lawsuit which had been dismissed" prior to the completion of the agreement. *See Grayson v. Grayson Armature Large Motor Div., Inc.*, No. 14-09-00748-CV, 2010 WL 2361432, at *5 (Tex. App.—Houston [14th Dist.] June 15, 2010, pet. denied) (mem. op.). Subjective impossibility is due wholly to the inability of the individual promisor. *See id*. Something is subjectively impossible if "I cannot do it," such as when a promisor's financial inability to pay makes it impossible for the promisor to perform. *See id*.

Objective impossibility can serve as a defense in a breach of contract suit. *Janak*, 586 S.W.2d at 906–07. However, a party cannot escape contract liability by claiming subjective impossibility; subjective impossibility neither prevents the formation of the contract nor discharges a duty created by a contract. *See Grayson*, 2010 WL 2361432, at *5; *Walston*, 2009 WL 2176320, at *6 n.2; *Janak*, 586 S.W.2d at 906–07.

## V. Analysis

Because the parties do not dispute (1) that the Note and Security Agreement exist and are valid, (2) that Steven executed the Note in Michele's favor for $460,000, (3) that Michele is the Note's owner and holder, and (4) that Steven did not meet his obligation when the Note matured, we conclude that Michele has met her burden under rule 166a(c). Thus, unless Steven raised a fact issue supporting his affirmative defenses sufficient to defeat Michele's

6

motion for summary judgment, the trial court did not err by granting summary judgment as a matter of law for Michele. *See Brownlee*, 665 S.W.2d at 112; *Anglo-Dutch Petroleum Int'l, Inc.*, 193 S.W.3d at 95.

Steven first argues that the trial court erred by granting summary judgment because reading the contemporaneously executed Note and Security Agreement together, as required by business and commerce code section 3.117, shows that he relied on his ability to sell the stock to meet the terms of the Note. He further argues that because he could not sell the Cano stock referenced in both the Note and the Security Agreement, he should have been relieved of his obligation under the Note. But Steven fails to point to, and we fail to find, any language in the Security Agreement that contradicts the Note or shows that the parties agreed that the Note's obligation would be satisfied solely from the sale of Steven's Cano stock. *See* Tex. Bus. & Comm. Code Ann. § 3.117 cmt. 1; *see also Brownlee*, 665 S.W.2d at 112 (holding that defendant's asserting legal conclusion that original agreement "was modified" was insufficient to defeat plaintiff's summary judgment motion). We also find nothing extraordinary in the language of the Note or the Security Agreement to show anything other than that the parties agreed that Steven's Cano stock would serve as collateral for the underlying obligation in the same manner that collateral generally serves to secure the performance of an outstanding obligation. In fact, the Security Agreement provides that Steven had "the right at any time to substitute certificates of deposit" in place of the Cano stock as security for the Note, thus,

the terms of the instrument itself directly contradict Steven's assertion that the parties intended that only his Cano stock be used to satisfy his obligation under the Note. We, therefore conclude that Steven failed to raise a fact issue relative to his section 3.117 defense sufficient to defeat Michele's motion for summary judgment.

Steven next argues that the trial court erred by failing to excuse his performance because it was impossible for him to sell his Cano stock. Steven relies on *Centex Corp. v. Dalton*, 840 S.W.2d 952 (Tex. 1992), to support his argument. However, in *Centex*, the supreme court found that a cease-and-desist order issued by a regulatory agency endowed with appropriate legal authority made it illegal for Centex to perform (to pay Dalton) under the agreement. *Id*. at 954. Here, the stock-sale moratorium Steven claims made his performance impossible did not make payment to Michele illegal; rather it simply temporarily impacted Steven's ability to sell the stock[4]—an asset that he could have used, but was not required to use, to satisfy his obligation. *See Huffines v. Swor Sand & Gravel Co., Inc.*, 750 S.W.2d 38, 40 (Tex. App.—Fort Worth 1988, no writ) ("Texas courts have held contractual obligations cannot be avoided simply

---

[4]Steven implies that it was illegal for him to sell his Cano stock, but he cites no regulatory authority in his brief and supported his assertion in the trial court only with an internal Cano memorandum that imposed a trading moratorium on Cano stock due to the proposed merger. Although the memorandum did not state that trading Cano stock was illegal during this period, it required employees desiring to trade Cano stock during the blackout period to consult with Cano's chief financial officer or corporate secretary and general counsel. But, even if it was illegal for Steven to sell the Cano stock during the blackout period, it would not change the outcome of this appeal.

8

because the obligor's performance has become more economically burdensome than anticipated."). And, because we conclude above that the Cano stock was not the exclusive method for Steven to satisfy his obligation, and because Steven did not raise any other argument to show that his performance under the Note was impossible, his claim of subjective impossibility does not excuse his performance under the Note, and he has failed to raise a fact issue supporting his affirmative defense of impossibility. *See Grayson*, 2010 WL 2361432, at *5–6; *Walston*, 2009 WL 2176320, at *6 n.2; *Janak*, 586 S.W.2d at 906–07.

Accordingly, because he failed to raise a fact issue on each element of his affirmative defenses sufficient to defeat Michele's motion for summary judgment, we overrule Steven's sole issue.

## VI. Conclusion

Having overruled Steven's sole issue, we affirm the trial court's summary judgment and final order.

BOB MCCOY<br>
JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DELIVERED: August 4, 2011

9

ATTACHMENT TO 2-10-296-CV, JOHNSON V. JOHNSON


NOTE AND SECURITY AGREEMENT REFERENCED IN FOOT NOTE 2


***Please note that scanned page 18, a title page, was intentionally omitted.***



## Note
[Secured by Security Agreement]

Date:      April 13, 2007

Maker:      **STEVEN JEFFREY JOHNSON**

Maker's Mailing Address:


      Tarrant County Texas 76102

Payee:      **MICHELE JEAN JOHNSON**

Place for Payment:


      County Texas 76034-6827

Principal Amount:      $460,000.00

Annual Interest Rate:      5%

Maturity Date:      April 13, 2010

Annual Interest Rate on Matured, Unpaid Amounts:      5%

Terms of Payment (principal and interest):

      The principal is due and payable April 13, 2010, and the interest is due and payable quarterly, as it accrues, in equal installments of $5,750.00. The first installment is payable on May 1, 2007 and a like payment is due quarterly on August 1, November 1, February 1, and May 1 of each year until the principal amount and accrued interest have been paid in full. On the entry of this agreement Maker has timely paid to Payee the quarterly interest installments due on May 1, 2007, August 1, 2007, November 1, 2007, February 1, 2008, May 1, 2008, August 1, 2008, November 1, 2008, February 1, 2009, May 1, 2009, August 1, 2009, and November 1, 2009 in the amount of $5,750.00 each.

Security for Payment:

      This note is secured by a security interest in a security agreement that covers 92,000 shares of Cano Petroleum, Inc. stock and that is executed by **STEVE JEFFREY JOHNSON** as the debtor in favor of Payee as the secured party. The original stock certificate representing 92,000 shares of Cano Petroleum, Inc., common stock is being held in trust by the trustee, Robert Hoover.

Other Security for Payment:

      Maker promises to pay to the order of Payee the principal amount plus interest at the annual interest rate. This note is payable at the place for payment and according to the terms of payment. All unpaid amounts are due by the maturity date. After maturity, Maker promises to pay any unpaid principal balance plus interest at the annual interest rate on matured, unpaid amounts.

Maker may prepay this note in any amount at any time before the maturity date without penalty or premium. Prepayments will be applied to installments on the last maturing principal, and interest on that prepaid principal will immediately cease to accrue.

If Maker defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to this note, Payee may declare the unpaid principal balance, earned interest, and any other amounts owed on the note immediately due. Maker and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

Maker also promises to pay reasonable attorney's fees and court and other costs if this note is placed in the hands of an attorney to collect or enforce the note. These expenses will bear interest from the date of advance at the annual interest rate on matured, unpaid amounts. Maker will pay Payee these expenses and interest on demand at the place for payment. These expenses and interest will become part of the debt evidenced by the note and will be secured by any security for payment.

Interest on the debt evidenced by this note will not exceed the maximum rate or amount of nonusurious interest that maybe contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal amount or, if the principal amount has been paid, refunded. On any acceleration or required or permitted prepayment, any excess interest will be cancelled automatically as of the acceleration or prepayment or, if the excess interest has already been paid, credited on the principal amount or, if the principal amount has been paid, refunded. This provision overrides any conflicting provisions in this note and all other instruments concerning the debt.

Maker is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

This note is given to evidence the indebtedness imposed by Maker by the Agreed Final Decree of Divorce rendered in Cause No. 233-411604-06, styled "In the Matter of the Marriage of Michele Jean Johnson and Steven Jeffrey Johnson, and in the Interest of
Johnson, Children," by the 233rd Judicial District Court of Tarrant County, Texas.


_____
STEVEN JEFFREY JOHNSON, Maker
801 Cherry Street, Floor 32
Fort Worth, Tarrant County, Texas 76102


Executed this 3rd day of February, 2010.

17

## SECURITY AGREEMENT WITH COLLATERAL PLEDGE AND APPOINTMENT OF ESCROW AGENT

This Security Agreement with Collateral Pledge and Appointment of Escrow Agent is made by and between MICHELE JEAN JOHNSON, Secured Party, and STEVEN JEFFREY JOHNSON, Debtor. The parties agree as follows:

1. **Obligation to Be Secured**

Under the terms of the Agreed Final Decree of Divorce entered in Cause No. 233-411604-06, styled "In the Matter of the Marriage of Michele Jean Johnson and Steven Jeffrey Johnson and In the Interest of _____, Children," filed of record in the 233rd Judicial District Court of Tarrant County, Texas, Debtor is indebted to Secured Party as evidenced by a promissory note of even date herewith in the original principal sum of $460,000.00, called "Debtor's obligations" in this agreement.

2. **Security**

Debtor and Secured Party desire to have Debtor grant to Secured Party a security interest in the collateral as security for Debtor's performance of the terms and conditions of Debtor's obligations.

3. **Security Interest**

Debtor grants to Secured Party a security interest in the collateral described in paragraph 4 below to secure the payment and performance of Debtor's obligations to Secured Party set forth in paragraph 5 below.

4. **Collateral**

The collateral in which the security interest is created is the following: 92,000 shares of Cano Petroleum, Inc. ("Cano") common stock, par value $0.0001 per share, represented by Cano stock certificate number *2945* (the "Certificate") or any substitute collateral deposited under the terms of paragraph 11.

5. **Obligation Secured**

The security interest created hereby secures the following:

a. payment of Debtor's obligations and performance and discharge of every covenant, condition, and agreement contained in the promissory note and any and all modifications, extensions, or renewals thereof; and

b. performance and discharge of every obligation, covenant, and agreement of Debtor contained in this agreement.

6. *Warranty and Representation of Debtor*

Debtor warrants and represents that the collateral is free and clear of any security interest (other than the security interest granted in this agreement), liens, restrictions (except for restrictions imposed by the Securities Act of 1933, as amended), or encumbrances and that Debtor has full right and power to transfer the collateral to Secured Party free and clear and to enter into and carry out the security agreement.

7. *Events of Default*

"Event of default" is any or all of the following:

a. Debtor's material failure to perform any covenant, agreement or condition required by this agreement;

b. Debtor's failure to materially perform Debtor's obligations evidenced by the promissory note in accordance with its terms;

c. the making or furnishing to Secured Party by or on behalf of Debtor of any warranty, representation, or statement that proves to have been false in any material respect when made or furnished;

d. any event that results in acceleration in the maturity of Debtor's obligation;

e. the making of any levy, seizure, or attachment of any collateral;

f. Secured Party's reasonable belief that the prospect of payment of any indebtedness secured by this agreement or the performance of the security agreement is impaired; or

g. death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the collateral, assignment for the benefit of creditors, or commencement of any proceeding in any bankruptcy or under any insolvency law by or against Debtor or any guarantor or surety for Debtor.

8. *Rights of Secured Party on Occurrence of an Event of Default*

On the occurrence of an event of default, Secured Party may foreclose the security interest in either of the following ways:

a. *Retention of Collateral.* Secured Party may retain in satisfaction of Debtor's obligation that portion of the collateral that has a "fair value" equal to the amount of Debtor's obligations that Debtor has failed to pay. "Fair value" of the collateral means the produced obtained by multiplying: 1) 92,000 by 2) the closing price of a share of Cano stock on the day such value is to be determined for purposes of this paragraph 8 on the principal securities exchange on which such stock is then listed or if there is no reported sale on that day, then the average of the bid and asked quotation on such exchange on that day.

b. *Sale of Collateral.* Subject to the provisions of subchapter F, chapter 9, of the Texas Business and Commerce Cod, Secured Party may instruct the escrow agent to offer the collateral at a public or private sale after ten days' written notice to Debtor, provided,



however, that any value in excess of that amount necessary to satisfy Debtor's obligations hereunder be remitted to Debtor.

9.  *Escrow Agent and Voting Rights*

Debtor appoints Robert Hoover of Fort Worth, Texas, as escrow agent for the collateral. Concurrently with the delivery by the escrow agent of a receipt for the collateral to Debtor, Debtor must deliver to the escrow agent the Certificate as the collateral. The collateral shall be held by the escrow agent in trust for safekeeping.

a.  *Terms of Escrow.* When satisfactory proof has been presented to the escrow agent that Debtor's obligations referred to in paragraph 1 above have been paid in full, the escrow agent must redeliver the Certificate held by the escrow agent to Debtor, and all obligations between Secured Party and Debtor and of the escrow agent will cease. If Debtor defaults in the payment of Debtor's obligations, Secured Party may give written notice of the default to the escrow agent. The escrow agent must then, with reasonable dispatch, offer the collateral for sale as provided in paragraph 8.

b.  *Voting.* As long as the collateral is held by the escrow agent and until Debtor defaults in Debtor's obligations, Debtor has the right to exercise all voting rights granted therein for all purposes. If requested by Debtor, Secured Party and the escrow agent must execute and deliver to Debtor the proxies and authorizations that are reasonably required to confirm the voting rights of Debtor during this period.

c.  *Dividends.* As long as the collateral is held by the escrow agent and until Debtor defaults in Debtor's obligations, all dividends, interest, and other income generated by the collateral belong to Debtor, including without limitation, any consideration given to Debtor in connection with Cano's proposed merger with Resaca Exploration, Inc., should such consideration be issued.

d.  *Voting Trust* As long as the collateral is held by the escrow agent and until Debtor defaults in Debtor's obligations, Debtor has the right to assign the collateral to a voting trust, if available, in which event the escrow agent must accept certificates of the voting trust as substitution for collateral. In the event of default, the escrow agent must deliver the certificate of the voting trust to Secured Party in the same manner as in the case of the collateral.

10. *Substitution of Escrow Agent.*

Debtor has the right at any time Debtor is not in default to remove the existing escrow agent and appoint any state or national bank chartered in Texas as substitute escrow agent or any other person mutually agreed upon by the Debtor and the Secured Party. The substitute escrow agent must perform subject to the terms and conditions of this agreement as they may apply to the duties and functions of the original escrow agent.

11. *Substitution of Collateral.*

Debtor has the right at any time to substitute certificates of deposit issued by any state or national bank chartered in Texas as security for Debtor's obligations in an amount equal to the then balance of Debtor's obligations secured by this agreement.

12. *Waiver of Rights or Remedies*

a. *No Waiver.* No failure or delay by Secured Party in exercising any rights, power, or privilege under this agreement operates as a waiver, and no single or partial exercise of any such power or privilege precludes it exercise or further exercise of any other right, power, or privilege.

b. *Severability.* If any provision of this agreement is for any reason found to be unenforceable, all other provisions nevertheless remain enforceable.

c. *Notices.* Any notices or other communications required or remitted under this agreement are sufficiently given if delivered personally or sent by certified mail, postage prepaid, to Steven Jeffrey Johnson, _____, Tarrant County, Texas 76102 and Michele Jean Johnson, _____, Tarrant County, Texas 76034-6827, or at such other addresses as shall be furnished in writing by either party to the other, and will be deemed to have been given as of the date so delivered or deposited in the United States mail.

d. *No Assignment by Secured Party.* This agreement and the security interest it creates are not assignable by Secured Party, but do and inure to the benefit of Secured Party's heirs, executors, or administrators and bind Debtor and Debtor's heirs, executors, administrators, legal representatives, and assigns.

e. *CHOICE OF LAW.* THIS AGREEMENT MUST BE CONSTRUED, AND ITS PERFORMANCE ENFORCED, UNDER TEXAS LAW.

SIGNED on the 3rd day of February, 2010.

_____
MICHELE JEAN JOHNSON, Secured Party

_____
STEVEN JEFFREY JOHNSON, Debtor

STATE OF TEXAS

COUNTY OF TARRANT

This instrument was acknowledged before me on the 25th day of March 2010 by MICHELE JEAN JOHNSON.



BRENDA G. MURRAY
Notary Public, State of Texas
My Commission Expires
May 22, 2011

*Brenda Murray*
Notary Public, State of Texas

STATE OF TEXAS

COUNTY OF TARRANT

This instrument was acknowledged before me on the 3rd day of February, 2010 by STEVEN JEFFREY JOHNSON.

*Susan Dean*
Notary Public, State of Texas