**J.L. HUFFINES, Jr., James Huffines, Ray Huffines, Phillip Huffines, and Donald Huffines, Appellants,**

v.

**SWOR SAND & GRAVEL CO., INC., Appellee.**

No. 2–87–155–CV.

Court of Appeals of Texas, Fort Worth.

May 5, 1988.

Jenkens & Gilchrist, David F. Hunt and Will S. Montgomery, Dallas, for appellants.

Bob Scofield, Denton, for appellee.

Before FENDER, C.J., and BURDOCK and HILL, JJ.

OPINION

FENDER, Chief Justice.

Appellants J.L. Huffines, Jr., James Huffines, Ray Huffines, Phillip Huffines, and Donald Huffines, plaintiffs in the court below, sued appellee, Swor Sand & Gravel Co., Inc., for breach of a sand, gravel, rock, and clay mining lease. After a jury trial, the trial court entered judgment for appellee. Appellants appeal the take-nothing judgment.

We reverse and render in part, and we reverse and remand in part.

In June, 1982, appellants and appellee executed a sand, gravel, rock, and clay lease for the mining of minerals on appellants' ranch. By its own terms, the lease was effective from June 1, 1982, until midnight May 31, 1983. In order to assure appellants a certain amount of income from the mining operations, the lease contained the following clause:

Lessee [Swor] *guarantees that royalties payable to lessors for each year that this lease is in effect shall be not less than Five hundred thousand, ($500,-000)*, and lessee agrees to pay at the end of each lease period (May 31st) the difference between *$500,000* and the royalty actually paid for removal of gravel, sand, rock and clay from the property to the lessor. *In the event the royalty payable under this lease does not reach the amount guaranteed* and the difference in the amount guaranteed and the royal-

ty actually paid under the terms of this lease is not paid in cash to the lessor prior to the end of the lease, the lease shall terminate and *the lessor shall have a claim for debt against the lessee in the amount of such deficiency.* [Emphasis added.]

In addition, the lease contained a provision that required appellee to restore the property to a certain specified condition.

In order to remove the minerals from the premises, appellee had large trucks exit appellants' ranch to Holferd's Prairie Road. The homeowners along the road complained of the disturbance created by the trucks. As a result, on May 16, 1983, the Denton County Commissioners Court set a weight limit of fifteen tons on Holferd's Prairie Road.

Appellee voluntarily vacated the premises and ceased all mining operations in May, 1983. At that time, appellee had paid only $319,000.00 of the $500,000.00 promised to appellants under the minimum guaranteed royalty clause. Nor did appellee restore the premises to the condition specified by the lease.

Appellants brought this lawsuit to enforce appellee's obligations under the lease. Appellee defended by claiming that it was "economically impracticable" to continue performance under the lease because of the weight limit change on the road. The jury answered the special issue as to the impracticability of performing the contract in favor of appellee.

Appellants' first point of error asserts that the trial court erred in submitting special issue no. 5 to the jury. We agree.

Special issue no. 5 reads as follows:

Do you find from a preponderance of the evidence that Swor Sand and Gravel Co. was unable to perform under the contract because performance of the contract became unexpectedly impracticable as a result of the load limit placed on Holferd's Road?

Answer "Yes" or "No".

ANSWER: _Yes_

You are instructed that "impracticability" means more than "impracticality".

A change in the degree of difficulty or expense unless well beyond the normal range does not amount to impracticality. A party is expected to use reasonable efforts to surmount obstacles to performance. A performance is impracticable only if it is so in spite of such efforts.

"Unexpectedly" means that the event or events might not reasonably have been anticipated and guarded against in a contract.

■ Where the obligation to perform is absolute, impossibility of performance occurring after the contract is made is not an excuse for nonperformance if the impossibility might have reasonably been anticipated and guarded against in the contract. *Metrocon Const. Co. v. Gregory Const. Co.*, 663 S.W.2d 460, 462 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); *Calvin v. Koltermann v. Underream Piling Co.*, 563 S.W.2d 950, 957 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.); *T.G. Shaw Oil Corp. v. Parker*, 61 S.W.2d 587, 589 (Tex. Civ.App.—Fort Worth 1933, no writ).

■ Here, Clarence Swor, the president of Swor Sand & Gravel Co., Inc., admitted load limits on roads were a big problem in the sand and gravel business. Clarence Swor also testified that the weight limit set in May, 1983, on the Holferd's Prairie Road was not surprising. Moreover, the weight limit was not imposed until May 16, 1983, just fifteen days before the $500,000.00 guaranteed minimum royalty was due. Appellee's obligations in the lease, as evidenced by the minimum guaranteed royalty clause and the restoration clause, were absolute. The weight limit change was admittedly foreseeable. Nevertheless, appellee did not take adequate measures to protect itself in the written lease against a weight limit change. As a result, appellee had no defense of impossibility of performance available to it.

■ As for the alleged "impracticability" defense, which is the actual term used in special issue no. 5, we find no support for such a defense in Texas law. On the contrary, Texas courts have held contractual obligations cannot be avoided simply because the obligor's performance has become more economically burdensome than anticipated. *Alamo Clay Products, Inc. v. Gunn Tile Co.*, 597 S.W.2d 388, 392 (Tex. Civ.App.—San Antonio 1980, writ ref'd n.r. e.); *Mahrer v. Mahrer*, 510 S.W.2d 402, 405 (Tex.Civ.App.—Dallas 1974, no writ). Although the trial court and appellee may have relied on the RESTATEMENT (SECOND) OF CONTRACTS secs. 261, 264 (1981), for the wording of special issue no. 5, a close reading of the American Law Institute's illustrations 2, 3, 4, 5, and 11 following section 261 of the Restatement leads us to the conclusion that "impracticability" is not a proper justification for nonperformance under the facts of the instant case. We conclude the submission of a jury issue on "impracticability" was improper. Nor, as we previously indicated, could special issue no. 5 be interpreted as an impossibility defense because appellee had no such defense available to it. Accordingly, appellants' point of error one is sustained.

We must next address the issue of no evidence to support the submission of an issue on impossibility or impracticability urged in appellants' second point of error. In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985).

Having held economic impracticability is not a recognized defense in Texas, we need not consider the "no evidence" challenge in relation to this defense. However, assuming the defense of impossibility was applicable to the facts of the instant suit, we agree that there is no evidence to support a defense of impossibility. Appellee failed to establish that performance under the lease was a physical impossibility or that the weight limit change was not reasonably foreseeable before the lease was made.

Although the testimony of Clarence Swor indicated the weight limit change made performance more difficult, it did not establish that performance was impossible. In fact, Clarence Swor testified that he had taken

loads of sand and gravel from appellants' property in small trucks which were below the weight limit set in May before the weight limit was even in effect. Appellee's own experts testified that hauling sand and gravel in small trucks is *possible,* but less profitable.

As for the foreseeability issue, Clarence Swor testified that he frequently encountered weight limits on roads, that they were a big problem in his business, and that there was a risk of limits changing after a job began. Thus, there was no evidence to show that appellee could not have foreseen a weight limit change or have guarded against such a change in the lease. Appellants' second point of error is sustained. In light of sustaining appellants' no evidence point, we need not address appellants' insufficient evidence argument contained in point of error three.

 Appellants assert in their fifth point of error that the trial court erred in overruling appellants' motion in limine. Before the commencement of trial, appellants made a motion in limine in part to exclude evidence that the weight limit on Holferd's Prairie Road was changed in May, 1983. The trial court overruled that portion of the motion. The objection contained in the motion was properly reurged during the course of the trial.

We have already determined that appellee's inability to perform the contract purportedly based on a weight limit imposed on an access road was no defense to appellants' suit. It follows that proof of this weight limit would be irrelevant and could actually prejudice the jury, and therefore the trial court erred in not excluding it. *See Northern Irr. Co. v. Watkins,* 183 S.W. 431, 436 (Tex.Civ.App.—Galveston 1916, writ ref'd). Appellants' fifth point of error is sustained.

 We note that appellants urge in their fourth point of error that the trial court erred in denying their motion for summary judgment. But an order denying a motion for summary judgment is not a proper subject for appeal. *Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex.1980). Point of error four is overruled.

We reverse the judgment of the trial court and render judgment in part for appellants in the amount of $221,000.00 plus interest at the rate of six percent per annum from the termination date of the lease. The $221,000.00 represents $181,000.00 in unpaid royalties under the terms of the lease and $40,000.00 as the sum the jury determined to be the reasonable cost of restoring the leased property. Appellants are also entitled to recover reasonable and necessary attorneys' fees through the appeal level. We remand the judgment in part to the trial court for a determination of attorneys' fees. Further, all court costs are assessed against appellee.

The trial court's judgment is reversed and rendered in part and reversed and remanded in part.