**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed May 21, 2015.**



In The

# Fourteenth Court of Appeals

---

NO. 14-14-00161-CV

---

**JOHN STEPHEN PHILIPS, Appellant**

**V.**

**GAIL MCNEASE, Appellee**

---

**On Appeal from the 247th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1997-57363**

---

## O P I N I O N

This post-divorce action to modify the terms of contractual alimony involves two separate claims: one asserted under the Family Code and another under the law of contracts. On appeal from a summary judgment, we conclude that the trial court erred by disposing of the Family Code claim because that claim was not specifically addressed in a motion for summary judgment. We reverse the judgment in part and remand for an adjudication of that claim. As for the contract

claim, we conclude that summary judgment was proper and we affirm the trial court's judgment.

## BACKGROUND

When John and Gail divorced in 1998, the trial court incorporated the terms of a written agreement into their final decree of divorce. One of the terms stated that John would provide a continuing measure of support to Gail in the form of "contractual alimony." John agreed to pay Gail $1,500 per month for her entire life, terminating only in the event of her remarriage. Even if John predeceased Gail, he agreed that any remaining obligations would be binding on his estate.

In 2002, John filed a petition to modify the terms of his contractual alimony, which he described as "maintenance and support." John asserted that a modification was available under Chapter 8 of the Texas Family Code because there had been a material and substantial change of circumstances since the rendition of the divorce decree. John alleged that Gail's income had substantially increased and that she had sufficient resources to meet her reasonable needs. Alleging further that his own income had decreased, John requested a corresponding decrease in his support payments to Gail.

John also sought other relief, asking for a complete termination of his contractual alimony. He alleged that the terms of his contractual alimony contravened the terms of statutory maintenance. He also alleged that his contractual alimony lacked consideration and that it was void for unconscionability.

Gail responded that the trial court lacked jurisdiction over the case. She claimed that John's petition to modify constituted an impermissible collateral

attack on the final decree of divorce. She also argued that a modification was precluded by res judicata and collateral estoppel.

In 2003, the trial court rejected Gail's arguments and found that a material and substantial change had occurred in the circumstances of the parties. The court entered an order that modified the divorce decree by reducing John's alimony obligations from $1,500 per month to $1,250 per month. All other terms remained unchanged. The court denied John's request to terminate his contractual alimony, and neither party appealed from the judgment.

In 2012, John filed another petition to modify. Once again, he broadly asserted two grounds for relief. In the first ground, which we identify as the "Family Code Claim," John claimed that a modification was available under Chapter 8 of the Family Code. He alleged that his circumstances had materially and substantially changed because he had recently suffered a heart attack, which caused him to incur about $40,000 in medical expenses. He further alleged that he had to forfeit a bonus when he lost his job, and that he had since taken on additional dependents.

In his second ground for relief, which we identify as the "Contract Claim," John claimed that the terms of the divorce decree should be set aside because of a multitude of contract theories. Most of the theories addressed the issue of contract formation. Those theories were lack of consideration, unconscionability, undue influence, duress, extrinsic fraud, and mistake of fact. In addition to these theories, John asserted a "frustration of purpose" theory for reasons unrelated to contract formation.

Gail filed several motions in response. In a plea to the jurisdiction, Gail asserted that the trial court had no authority to act under the Family Code. She explained that the Family Code applies to court-ordered maintenance, but not

contractual alimony. Because the divorce decree explicitly provided that John's support payments were in the form of "contractual alimony," Gail argued that any attempt to modify or abrogate John's obligation must be governed by contract law principles.

Gail also moved for summary judgment on traditional and no-evidence grounds. In both of her motions, Gail restricted her arguments to the Contract Claim. In her no-evidence motion, she asserted that there was no evidence to support any theory alleged under the Contract Claim. In her traditional motion, she argued that each theory was barred by res judicata, with the exception of frustration of purpose. In the alternative, she argued that each theory, including frustration of purpose, failed as a matter of law. Gail did not seek summary judgment on the Family Code Claim.

In response to Gail's plea, John argued that the trial court had already established its jurisdiction when it granted relief in the first modification proceeding. John argued further that contractual alimony was governed by the Family Code, and that the word "alimony" as used in the final decree of divorce "is for all practical purposes synonymous with maintenance."

John also asserted that res judicata did not apply and that there were fact issues that precluded a summary judgment. In support of these arguments, John attached more than forty exhibits to his summary-judgment response. Gail filed a list of written objections, complaining that nearly every one of those exhibits had not been authenticated and was inadmissible as hearsay.

In 2013, the trial court sustained Gail's evidentiary objections and granted her motions for summary judgment. The court signed a "Final Judgment," which purported to dismiss the entirety of John's petition to modify. The recitals reflect that the trial court considered Gail's plea to the jurisdiction at the same time as the

4

motions for summary judgment, but the court did not expressly address the plea to the jurisdiction in any of its rulings. At the bottom of the judgment, a Mother Hubbard clause provided: "All other relief not herein granted is hereby DENIED."

## ISSUES PRESENTED

John raises five issues in this appeal. In his first issue, he contends that the trial court erred by dismissing the Family Code Claim. In his second and third issues, he contends that the trial court erred by granting Gail's traditional and no-evidence motions for summary judgment. In his fourth issue, he contends that the trial court erred by sustaining Gail's objections to his summary-judgment evidence. And in his fifth issue, he contends that perpetual spousal alimony is against the public policy of the state.

## FAMILY CODE CLAIM

John contends that we must reverse the trial court's judgment because it grants more relief than what Gail requested. John focuses his argument on the dismissal of the Family Code Claim. He explains that this claim was not addressed in either of Gail's motions for summary judgment. Rather, it was addressed in her plea to the jurisdiction, and according to John, there was no ruling on the plea to the jurisdiction.

If the judgment did not actually dispose of this claim, and the trial court had jurisdiction over the claim, then the judgment is not final for purposes of appeal. Under such circumstances, we must dismiss the appeal, instead of reverse the judgment. *See Guajardo v. Conwell*, 46 S.W.3d 862, 864 (Tex. 2001) (per curiam); *Lentino v. Frost Nat'l Bank*, 159 S.W.3d 651, 655 (Tex. App.—Houston [14th Dist.] 2003, no pet.). The outcome depends on whether this court has appellate jurisdiction. Although neither party has briefed the issue, we have an independent

duty to confirm that we have jurisdiction over the appeal. *See SJ Med. Ctr., L.L.C. v. Estahbanati*, 418 S.W.3d 867, 870 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Therefore, we address this threshold question first.

## I.     Appellate Jurisdiction

This court's jurisdiction is established exclusively by constitutional and statutory enactments. *See* Tex. Const. art. V, § 6; Tex. Gov't Code § 22.220. Unless one of the sources of our authority specifically enables an interlocutory appeal, we only have jurisdiction over an appeal taken from a final judgment. *See* Tex. Civ. Prac. & Rem. Code §§ 51.012, 51.014; *N.E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex. 1966).

A judgment issued without a conventional trial is final for purposes of appeal if and only if it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and parties. *See Lehmann v. Har-Conn Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001). Because a final judgment does not have to be in any particular form, deciding whether a judicial decree is a final judgment must be determined from its language and the record in the case. *Id.* at 195. If the judgment does not dispose of every pending claim but is "clearly and unequivocally" final on its face, the judgment is not interlocutory merely because the record does not afford a legal basis for the adjudication. *Id.* at 206. Rather, the judgment is final but erroneous, and it must be reversed. *Id.*

The judgment here contains a recitals paragraph indicating that the trial court considered four separate motions, each filed by Gail: (1) a plea to the jurisdiction, (2) a traditional motion for summary judgment, (3) a no-evidence motion for summary judgment, and (4) a list of objections to John's summary-judgment

evidence. In the same recitals paragraph, the trial court sustained Gail's evidentiary objections and granted her motions for summary judgment.

A single decretal paragraph follows. It says: "It is therefore ORDERED, ADJUDGED and DECREED that Summary Judgment be entered for [Gail], and [John's] Petition to Modify Alimony Payments is hereby dismissed. Court costs are assessed against [John]."

After that, there is a Mother Hubbard clause and a sentence declaring that "THIS IS A FINAL JUDGMENT."

The judgment does not contain *Lehmann*-type language, explicitly providing that the "judgment finally disposes of all parties and all claims and is appealable." But that omission is not dispositive. The record shows that John and Gail are the only parties to this lawsuit, and John asserted his only two claims (the Family Code Claim and the Contract Claim) in his petition to modify. Gail did not have any counterclaims. By expressly dismissing the petition to modify, the trial court left no parties or claims to be adjudicated. Even if the trial court lacked a legal basis for the dismissal, its judgment contains unmistakable language of finality. We accordingly conclude that we have appellate jurisdiction.

## II. Analysis

Proceeding now to the merits of John's argument, we first note that there was a ruling on Gail's plea to the jurisdiction. The recitals paragraph in the court's judgment reflects that the court considered Gail's plea at the same time as her motions for summary judgment. By failing to take express action on the plea, the trial court implicitly denied it when the court rendered a judgment containing a Mother Hubbard clause.

7

The denial of Gail's plea says nothing, however, about whether the trial court correctly dismissed the Family Code Claim. For that question, we must examine the motions for summary judgment, which are the only dispositive motions in the case. If grounds for dismissing the Family Code Claim were not expressly set forth in a motion for summary judgment, then the trial court erred by granting the summary judgment. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex. 1993) (holding that a trial court errs if it grants a summary judgment on an issue not raised in a motion for summary judgment); *Narnia Invs., Ltd. v. Harvestons Sec., Inc.*, No. 14-10-00244-CV, 2011 WL 3447611, at *3–5 (Tex. App.—Houston [14th Dist.] Aug. 9, 2011, no pet.) (mem. op.) (same).

Gail did not address the Family Code Claim in her motions for summary judgment. As indicated above, both motions exclusively address the Contract Claim. Because the motions provide no basis for disposing of the Family Code Claim, we conclude that the trial court's judgment is erroneous and overbroad.

On appeal, Gail does not attempt to broaden the scope of her motions so that the grounds she asserts in them extend to the Family Code Claim. Instead, Gail argues that John waived any error regarding the scope of the final judgment because he never objected that it was overbroad. We disagree with Gail's waiver argument. A trial objection is not required if the grounds expressly set forth in the motion are insufficient as a matter of law to support the summary judgment. *See Welch v. McDougal*, 876 S.W.2d 218, 226 (Tex. App.—Amarillo 1994, writ denied) (reversing a summary judgment because the movants did not address each of the non-movant's claims, despite movants' appellate argument that the non-movants had failed to preserve error).

Gail argues next that, even if the summary judgment is erroneous, it should not be sent back because the trial court lacks jurisdiction over the Family Code

Claim. Gail explains that the trial court's authority under the Family Code is limited to modifying the terms of court-ordered maintenance, which is separate and distinct from contractual alimony. Because the final decree of divorce expressly provides that John is to pay contractual alimony, Gail argues that the trial court has no authority to even consider the Family Code Claim.

Gail's argument is more merits-based than jurisdictional. A trial court has ample authority under the Family Code to modify the terms of a divorce decree. *See, e.g.*, Tex. Fam. Code § 8.057. Gail contends that a modification could not happen here because the grounds set forth in John's petition are not recognized under the Family Code. But whether John has stated valid grounds for relief under the Family Code does not answer whether the trial court has jurisdiction over this modification proceeding. A court can have jurisdiction even where the plaintiff is incapable of prevailing. *See, e.g.*, *Brown v. De La Cruz*, 156 S.W.3d 560, 569 (Tex. 2004) (rendering a judgment that the plaintiff take nothing, rather than dismissing the case for want of jurisdiction, after concluding that the plaintiff could have no private cause of action under the Property Code).

A trial court's jurisdiction, like ours, is established by constitutional and statutory enactments. *See* Tex. Const. art. V, § 8; Tex. Gov't Code 24.007. The court in this case, the 247th Judicial District Court, has the same jurisdiction that is generally afforded to all trial courts in the state, but the Legislature has instructed that it "shall give preference to family law matters." *See* Tex. Gov't Code § 24.424(b). These matters include "divorce and marriage annulment." *Id.* § 24.601(b)(3).

John sought a modification of his divorce decree, which clearly falls within the scope of a "family law matter." We therefore conclude that the trial court has subject-matter jurisdiction over the Family Code Claim. That claim must now be

remanded to the trial court for it to determine, in the first instance, whether the claim has any merit. We express no opinion as to how the trial court should rule, nor do we comment on whether the trial court acted properly or improperly by reducing John's alimony obligation in the first modification proceeding.

## CONTRACT CLAIM

In his second and third issues, John challenges the trial court's summary judgment, which dismissed his Contract Claim on traditional and no-evidence grounds.

As indicated above, the Contract Claim is a collection of many different contract theories asserted by John to void or discharge his duty to pay contractual alimony. We address one of the contract theories, frustration of purpose, in the context of Gail's no-evidence motion for summary judgment, and we address the remainder through the lens of Gail's traditional motion. We begin with the no-evidence motion. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

## I.     No-Evidence Motion

"Frustration of purpose" is an excuse to performance that is sometimes described as "impossibility of performance" or "commercial impracticability." *See Ramirez Co. v. Hous. Auth. of City of Houston*, 777 S.W.2d 167, 173 n.11 (Tex. App.—Houston [14th Dist.] 1989, no writ). Under this theory, an obligor may be excused from performing a contract if an event occurs and the contract was made on the basic assumption that the event would not occur. *See* Restatement (Second) of Contracts § 261; *Chevron Phillips Chem. Co. v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 52 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

Texas has recognized three contexts in which the excuse may be available: (1) the death or incapacity of a person necessary for performance, (2) the destruction or deterioration of a thing necessary for performance, and (3) a change in the law that prevents a person from performing. *See Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co.*, 118 S.W.3d 60, 65 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

To be excused under this theory, John had to show supervening circumstances that made his performance impossible. *See Centex Corp. v. Dalton*, 840 S.W.2d 952, 954 (Tex. 1992). John alleged that he met this standard for two reasons, both of which were asserted under the Family Code Claim. First, John alleged that Gail's economic situation has dramatically improved, such that she no longer needs to receive alimony to meet her reasonable needs. Second, he alleged that his own economic situation has deteriorated because he has incurred significant debt and he has taken on additional dependents.

In her no-evidence motion for summary judgment, Gail asserts that she is entitled to judgment as a matter of law because there is no evidence that John's performance has actually become impossible.

When a movant asserts that there is no evidence of one or more essential elements of a claim, the burden rests with the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *See* Tex. R. Civ. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We will sustain a no-evidence motion when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *See City of*

11

*Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). The evidence is insufficient if it is so weak as to do no more than create a mere surmise or suspicion that the challenged fact exists. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009).

John attached many exhibits to his summary-judgment response. Several of those exhibits purport to show that Gail has ample financial resources at her disposal. Some exhibits also support John's claim that he has financial obligations outside of his contractual alimony.

We need not determine whether the trial court properly sustained Gail's objections to any of these exhibits. Even if we assumed that the exhibits were authenticated and admissible, they do not support John's claim that his performance has become impossible. At best, the exhibits show that John's performance is more difficult now than in 1998, when he originally agreed to the contractual alimony. John's performance cannot be excused simply because it has become economically burdensome. *See Huffines v. Swor Sand & Gravel Co., Inc.*, 750 S.W.2d 38, 40 (Tex. App.—Fort Worth 1988, no writ).

Because there is no evidence that John's performance has been made impossible by a supervening circumstance, we conclude that his frustration of purpose theory fails as a matter of law. The trial court correctly granted Gail's no-evidence motion on this point.

## II. Traditional Motion

In his current petition, John alleges that his contractual alimony should be voided for other reasons that were discoverable at the time of contract formation. Those reasons are lack of consideration, unconscionability, undue influence, duress, extrinsic fraud, and mistake of fact.

12

In her traditional motion, Gail argues that res judicata precludes John from relitigating his claims of lack of consideration and unconscionability. She argues that the other claims are also barred because they could have been raised in the first modification proceeding.

The doctrine of res judicata holds that a final judgment bars the parties and their privies from bringing a second suit not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit. *See Compania Financiara Libano, S.A. v. Simmons*, 53 S.W.3d 365, 367 (Tex. 2001) (per curiam). Res judicata is an affirmative defense, and to prove it, the defendant must show each of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of the parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *See* Tex. R. Civ. P. 94; *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007).

As the movant below, Gail carried the burden of conclusively establishing all elements of her affirmative defense. *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996) (per curiam). Only if she proved her case did the burden shift to John to raise an issue of material fact. *See* Tex. R. Civ. P. 166a(c); *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). We review the trial court's summary judgment de novo, considering all of the evidence in the light most favorable to John. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

Gail did not attach to her motion a copy of the prior judgment, but the judgment was contained in the court's own files, and the court was allowed to take

13

judicial notice of that judgment. *See* Tex. R. Civ. P. 166a(c) (proper summary-judgment evidence includes "authenticated and certified public records, if any, on file at the time of the hearing"); *Sparkman v. Kimmey*, 970 S.W.2d 654, 659 (Tex. App.—Tyler 1998, pet. denied) (trial court could consider its own files in summary-judgment action based on res judicata). Moreover, John judicially admitted in his petition that there is a prior final judgment, and Gail was entitled to rely on that admission in her motion for summary judgment. *See* Tex. R. Civ. P. 166a(c) (proper summary-judgment evidence includes the "admissions" of the parties); *H20 Solutions, Ltd. v. PM Realty Group, LP*, 438 S.W.3d 606, 620 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). We conclude that the first element of res judicata has been conclusively established.

The record shows that the prior judgment was between just John and Gail. Thus, Gail conclusively established that the first modification proceeding involved the same parties as the current modification proceeding. The second element has been met.

To prove the third element, Gail attached to her motion a copy of the petition from the first modification proceeding. In that petition, John alleged that his agreement lacked consideration "because there was no detriment to [Gail], (i.e., forbearance, loss or responsibility), in the undertaking of the benefits." John also alleged that the agreement was unconscionable and overreaching because his obligations continued indefinitely until Gail remarried or died.

In the current modification proceeding, John alleges a lack of consideration because he received nothing of value from Gail. He further alleges that the agreement is unconscionable because the terms are grossly one-sided. Because these are the exact same theories that were raised and rejected in the first modification proceeding, the doctrine of res judicata prevents John from

14

relitigating them now. As to the claims of lack of consideration and unconscionability, Gail demonstrated that she is entitled to judgment as a matter of law.

John did not allege undue influence, duress, extrinsic fraud, or mistake of fact during the first modification proceeding, but Gail argues in her motion that he could have raised these claims. We agree. All of these claims relate to issues of contract formation.[1] Thus, they are claims that were known or should have been known at the time of the first modification proceeding, and with reasonable diligence, could have been brought at that time. Res judicata bars John from asserting those claims in a second action. *Cf. In re Estate of Cantu*, No. 04-10-00389-CV, 2011 WL 446640, at \*2 (Tex. App.—San Antonio Feb. 9, 2011, no pet.) (mem. op.) (res judicata barred a will contestant from asserting forgery in a second action where the contestant previously attempted to set aside the will on the basis of undue influence and lack of testamentary capacity); *Martinez v. Arredondo*, 406 S.W.2d 513, 514 (Tex. Civ. App.—Beaumont 1966, no writ) (res judicata barred a will contestant from raising undue influence in a second action where the contestant previously attempted to set aside the will on the basis that the testatrix was bound by a prior irrevocable will).

---

[1] The factual bases for John's claims are not set forth in his petition to modify. During a deposition and in his summary-judgment response, John explained that Gail unduly influenced him with feelings of guilt. He also asserted that his undue influence claim arose from a misperception that he and Gail were using the same attorney during the divorce.

For his duress claim, John explained that Gail threw a knife at him "months" before the divorce, and she sent an embarrassing email to his coworkers during the divorce.

For his fraud claim, John explained that there were discussions that his alimony obligations would not create "a forever situation." He also asserted that Gail misled him into believing that they had the same attorney during the divorce, when in fact, only she had representation.

For his mistake claim, John explained that there was a belief that the contractual alimony would only be temporary.

We hold that Gail conclusively established her affirmative defense as to each of John's contract theories, excluding frustration of purpose. The burden then shifted to John to show that summary judgment was improper.

John did not raise any specific fact questions as to Gail's affirmative defense. On this issue, his summary-judgment response contained just three short sentences:

> The court should not be persuaded by [Gail's] argument to the effect that [John's] contractual defenses are barred by *res judicata*. First, no court in Texas has yet held that contractual defenses to the enforcement of an alimony agreement are compulsory claims, as opposed to merely permissive claims, in a modification proceeding governed under the family code. Second, some of the contractual defenses raised now, including frustration of purpose, might not have arisen at the time of the previous modification.

The premise in John's first point is faulty. The Contract Claim seeks a termination of John's contractual alimony, not a modification of it. The claim is therefore governed by the law of contracts. *See McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984) ("[A property settlement] agreement, though incorporated into a final divorce decree, is treated as a contract, and its legal force and its meaning are governed by the law of contracts, not by the law of judgments."). Furthermore, it is well-established that res judicata applies to actions sounding in contract. *See Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992).

The second point lacks merit as well. Gail did not argue in her traditional motion that res judicata barred John's claim for frustration of purpose. Instead, she argued that the other contract theories were barred because they were known, or should have been known, at the time of the first modification hearing. John did not cite or produce any evidence showing that he was incapable of asserting these

16

other theories in his first lawsuit. Because John failed to raise a fact issue, we conclude that Gail is entitled to judgment as a matter of law.

## PUBLIC POLICY

In his last issue, John argues that the terms of his contractual alimony are "antithetical to centuries-old public policy." John bases this broadly-worded argument on two separate points, which we address in turn.

John first claims that his alimony obligations are against public policy because they were not reduced to writing before the trial court rendered the final decree of divorce. We are not aware of any requirement that there be a prior written manifestation of the parties' agreement. The case law actually holds that the decree itself may operate as the written manifestation of the parties' agreement. *See Mackey v. Mackey*, 721 S.W.2d 575, 579 (Tex. App.—Corpus Christi 1986, no writ) ("[I]t is not necessary that there be a written agreement separate and apart from the agreed decree.").

John's second policy argument focuses on the indefinite nature of his alimony obligation. He describes his obligation as "perpetual," and contends that this is contrary to the terms of court-ordered spousal maintenance. The comparison is not appropriate however. John's obligation is contractual, rather than court-ordered, and the terms of his contract do not have to adhere to the same sorts of terms that might otherwise restrict a court.

John was free to negotiate different terms during the pendency of his divorce, but he did not. A deal is a deal, and we will enforce John's contractual obligation to the fullest extent that the law of contracts will allow. *See, e.g.*, *Cardwell v. Sicola-Cardwell*, 978 S.W.2d 722, 728 (Tex. App.—Austin 1998, pet. denied) (holding that obligor's estate was bound to pay contractual alimony even

17

after the obligor's death). The terms of his contractual alimony are not void for being against public policy. *See Francis v. Francis*, 412 S.W.2d 29, 33 (Tex. 1967) ("[O]bligations assumed by the husband in separation agreements or contracts to make payments for the support of the wife after divorce becomes final are not obligations to pay alimony and do not violate the public policy of this State.").

## CONCLUSION

Without reaching the merits of John's fourth issue, we reverse the trial court's judgment to the extent that it erroneously disposes of the Family Code Claim, and we remand the case to the trial court for an adjudication of that claim. In all other respects, the trial court's judgment is affirmed.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Christopher, Donovan, and Wise.