

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00237-CV

———————————————

IMPERIAL CHARTERS, LLC, Appellant

V.

REDWOOD FIRE AND CASUALTY INSURANCE COMPANY, Appellee

---

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2022-006827-3

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

## I. INTRODUCTION

After Appellant Imperial Charters, LLC failed to pay premiums on an auto insurance contract in 2020, Appellee Redwood Fire and Casualty Insurance Company canceled the policy and, in late 2022, sued Imperial Charters for breach of contract. Imperial Charters responded by asserting the affirmative defense of impossibility of performance due to COVID-19[1] and—based on Redwood's crediting rather than refunding certain monies—counterclaims for (1) breach of the contractual duty of good faith and fair dealing and (2) fraud. Later, in early 2024, Redwood filed a motion for summary judgment on both its claim and on Imperial Charters' counterclaims. The trial court granted Redwood's motion, awarded Redwood damages and attorney's fees, and ordered Imperial Charters to take nothing on its counterclaims.

Imperial Charters appeals. In two issues, it argues that the trial court erred by (1) granting summary judgment on Redwood's breach of contract claim because there was a fact issue on whether performance was impossible and (2) granting summary judgment that Imperial Charters take nothing on its counterclaims because there was a

---

[1]"In late 2019, a novel coronavirus that had not been previously identified emerged from Wuhan, China[,] and began causing a respiratory disease known as COVID-19 that spreads from person to person. . . . On March 11, 2020, the World Health Organization . . . characterized the COVID-19 outbreak as a pandemic with global reach . . . ." *In re Berrenberg*, 605 S.W.3d 922, 924 n.3 (Tex. App.—El Paso 2020, orig. proceeding).

fact issue on whether Redwood's crediting rather than refunding certain monies constituted a breach of the contractual duty of good faith and fair dealing or fraud. We affirm.

## II. BACKGROUND

Imperial Charters provided charter bus services for hire. Redwood issued a commercial auto policy to Imperial Charters for the period effective June 19, 2019, to June 19, 2020. After Imperial Charters failed to make the monthly premiums in February, March, and April 2020, Redwood sent a notice of cancellation, effective June 2, 2020. When calculating how much Imperial Charters owed, Redwood credited Imperial Charters $2,369 for unearned premiums and $2,892 as a one-time COVID-19 credit. After applying those credits, Redwood determined that Imperial Charters owed it $11,554.76.

When Imperial Charters failed to pay, Redwood sued for breach of the auto insurance policy, seeking the $11,554.76 in damages plus attorney's fees.

In its answer, Imperial Charters asserted the affirmative defense of impossibility of performance due to COVID-19.[2] *See* Tex. R. Civ. P. 94. And as counterclaims, based on Redwood's crediting rather than refunding the $2,369 and the

---

[2]Imperial Charters also asserted fraud as an affirmative defense, but in its appellate issues, it identifies fraud only as a counterclaim.

3

$2,892, Imperial Charters asserted (1) breach of the contractual duty of good faith and fair dealing and (2) fraud.[3]

After the case had been pending for about 16 months, Redwood filed a traditional and no-evidence motion for summary judgment. In its response, Imperial Charters argued both its affirmative defense of impossibility of performance and its counterclaims for breach of the duty of good faith and fair dealing and fraud.

To support its affirmative defense of impossibility of performance, Imperial Charters relied upon *BB FIT, LP v. EREP Preston Trail II, LLC*, No. 05-22-00682-CV, 2023 WL 7401501 (Tex. App.—Dallas Nov. 9, 2023, no pet.), to argue that its business was effectively shut down during the pandemic. Redwood responded by arguing that *BB FIT* was distinguishable because, unlike the business in *BB FIT* that was shut down by a Dallas County judge order, *see id.* at *2, the charter bus industry was not legally prohibited from operating.

As to the counterclaims, Imperial Charters argued that Redwood should have refunded the "return premiums" to it instead of using them as credits against the amounts that it owed Redwood and that the failure to refund the premiums

---

[3]Imperial Charters alleged in both counterclaims that Redwood had inflated the amount Imperial Charters owed by keeping the policy in place until June (and causing Imperial Charters' unpaid premiums to increase) notwithstanding the fact that Imperial Charters had defaulted in January. Redwood's motion for summary judgment focused on this argument. On appeal, Imperial Charters does not pursue the allegation regarding inflated premiums. The counterclaims also alleged fraudulent offsets, a contention that Imperial Charters continues to contest on appeal. Imperial Charters asserted that the same facts supported both counterclaims.

constituted a breach of the duty of good faith and fair dealing and fraud. Redwood responded by asserting that the $2,369 and $2,892 had been correctly credited against amounts that Imperial Charters owed.[4]

The trial court granted Redwood's motion for summary judgment on both traditional and no-evidence grounds, and it signed a judgment awarding Redwood $11,554.76 in damages and $7,490.65 in attorney's fees and ordering that Imperial Charters take nothing on its counterclaims.

## III. STANDARD OF REVIEW

This case involves a traditional motion for summary judgment on a party's own claim, a traditional and no-evidence motion for summary judgment on an opponent's counterclaims, a party's response to its traditional motion for summary judgment on its opponent's claim, and a party's affirmative defense to a motion for summary judgment on its opponent's claim. Although summary judgment motions, responses,

---

[4]Although Imperial Charters' counterclaims referred to fraudulent offsets generically, they did not identify any specifically. Imperial Charters first identified the $2,369 and $2,892 credits as improper offsets in its answer to Redwood's motion for summary judgment. Thus, in Redwood's motion for summary judgment, it did not have the benefit of knowing precisely what Imperial Charters was alleging. Despite that, in its motion for summary judgment, Redwood asserted that it had given Imperial Charters a "premium reduction" or "return premium" of $2,892 and a "return premium" of $2,369. After Imperial Charters specifically identified the "return premiums" as fraudulent offsets in its response to Redwood's motion for summary judgment, Redwood—in its reply—argued the amounts were properly credited.

5

and defenses share commonalities, they also can differ significantly. We address first their commonalities. We then address their differences.

## A. Similarities

### 1. Legal Issues

When a trial court renders a summary judgment, we review its legal rulings de novo. *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008); *see Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018).

### 2. Evidentiary Review

We consider the presented evidence in the light most favorable to the nonmovant. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We credit evidence favorable to the nonmovant if reasonable factfinders could and disregard evidence contrary to the nonmovant unless reasonable factfinders could not. *Id.* We resolve any doubts and indulge every reasonable inference in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

## B. Differences

### 1. Traditional Motion for Summary Judgment on Movant's Own Claim or on Defense to Opponent's Claim

When considering a traditional motion for summary judgment on the movant's own claim or on a defense to an opponent's claim, we will affirm a summary judgment only if the record establishes that the movant has conclusively proven all the essential elements of the movant's cause of action (or defense, as the case may be)

as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

## 2. Affirmative Defenses

Generally, a plaintiff moving for a traditional summary judgment on its own claim is under no obligation to negate a defendant's pleaded affirmative defenses. *A.J. Morris, M.D., P.A. v. De Lage Landen Fin. Services, Inc.*, No. 2-06-430-CV, 2009 WL 161065, at *12 (Tex. App.—Fort Worth Jan. 22, 2009, no pet.) (mem. op.); *Woodside v. Woodside*, 154 S.W.3d 688, 691–92 (Tex. App.—El Paso 2004, no pet.); *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "If the party opposing a summary judgment relies on an affirmative defense, [it] must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment." *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Woodside*, 154 S.W.3d at 691–92. *Tesoro Petroleum*, 106 S.W.3d at 124; *see "Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex. 1972).

## 3. Nonmovant's Response to a Traditional Motion for Summary Judgment

When a movant meets its burden of establishing each element of the claim or defense on which it seeks summary judgment, the burden then shifts to the nonmovant to disprove or raise a fact issue as to at least one of those elements. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014).

But if the movant does not satisfy its initial burden, the nonmovant need not respond or present any evidence. *Id.* This is because traditional summary judgment motions must stand or fall on their own merits; consequently, the nonmovant's failure to answer or respond cannot supply by default the summary judgment proof needed to establish the movant's right to judgment. *Id.* at 511–12.

### 4. Traditional Motion for Summary Judgment on Opponent's Claim

For a party to prevail on a traditional motion for summary judgment on an opponent's claim, the party must either disprove at least one element of the opponent's claim as a matter of law or conclusively establish all the elements of an affirmative defense. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Ward v. Stanford*, 443 S.W.3d 334, 342 (Tex. App.—Dallas 2014, pet. denied).

### 5. No-Evidence Motion for Summary Judgment

As for a no-evidence summary judgment motion, "a properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion." *Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023); *Hydroworks Inc. v. Est. of Williams*, No. 02-23-00326-CV, 2024 WL 3611263, at *3 (Tex. App.—Fort Worth Aug. 1, 2024, no pet.) (mem. op.). When reviewing a no-evidence motion for summary judgment, we look to see if the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact as to

8

each element challenged; if the nonmovant does, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Prince v. Weleba*, No. 02-23-00085-CV, 2023 WL 6476009, at *3 (Tex. App.—Fort Worth Oct. 5, 2023, no pet.) (mem. op.); *see* Tex. R. Civ. P. 166a(i).

## IV. DISCUSSION

In its first issue, Imperial Charters argues that the trial court erred by granting summary judgment on Redwood's breach of contract claim because there was a fact issue on whether performance was impossible. Accordingly, we first address Redwood's motion for summary judgment on its breach of contract claim, which turns on Imperial Charters' affirmative defense.

And in its second issue, Imperial Charters asserts that the trial court erred by granting summary judgment that it take nothing on its counterclaims because there was a fact issue on whether Redwood's crediting rather than refunding the "return premiums" constituted a breach of the contractual duty of good faith and fair dealing or fraud. We address Redwood's motion for summary judgment on each counterclaim separately.

9

### A. Redwood's Traditional Motion for Summary Judgment on its Claim

#### 1. Redwood's Breach of Contract Claim and Imperial Charters' Affirmative Defense

Imperial Charters does not assert that Redwood failed to meet its burden under the applicable traditional motion for summary judgment standard. *See City of Houston*, 589 S.W.2d at 678. Rather, Imperial Charters relies on its impossibility of performance affirmative defense to defeat Redwood's motion.

#### a. Applicable Law

"The impossibility defense has been referred to by Texas courts as impossibility of performance, commercial impracticability, and frustration of purpose." *Key Energy Servs., Inc. v. Eustace*, 290 S.W.3d 332, 339 (Tex. App.—Eastland 2009, no pet.). Impossibility of performance, commercial impracticability, or frustration of purpose may excuse contractual performance "if an event occurs and the contract was made on the basic assumption that the event would not occur." *Zemos Logistics, LLC v. BKT Enters.*, No. 02-23-00049-CV, 2023 WL 8467374, at *5 (Tex. App.—Fort Worth Dec. 7, 2023, no pet.) (mem. op.) (quoting *Philips v. McNease*, 467 S.W.3d 688, 695–96 (Tex. App.—Houston [14th Dist.] 2015, no pet.)); *see Centex Corp. v. Dalton*, 840 S.W.2d 952, 954 (Tex. 1992); Restatement (Second) of Contracts § 265 (Am. Law Inst. 1981) ("Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render

10

performance are discharged, unless the language or the circumstances indicate the contrary.").

Texas recognizes three contexts in which the impossibility of performance defense may be available: (1) a death or incapacity of a person necessary for performance, (2) a destruction or deterioration of a thing necessary for performance, and (3) a change in the law that prevents a person from performing. *Zemos Logistics, LLC*, 2023 WL 8467374, at *5; *Philips*, 467 S.W.3d at 696; *Tractebel Energy Mktg., Inc. v. E.I. Eu Pont De Nemours & Co.*, 118 S.W.3d 60, 65 (Tex. App.—Houston [14th Dist.], pet. denied), *supp. op. on reh'g*, 118 S.W.3d 929 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

### b. Application

In its summary judgment motion, Imperial Charters asserted that COVID-19, along with Governor Greg Abbott's March 19, 2020 executive order in response to the COVID-19 pandemic, made performance of the contract—as a practical matter—impossible. Imperial Charters also relied on two Commissioner's Bulletins from the Texas Department of Insurance—one addressing grace periods for payment and the other addressing premium adjustments—for the proposition that COVID-19 had greatly reduced its business climate. Based on these Commissioner's Bulletins, Imperial Charters asserted that the insurance industry was aware of the business downturn that COVID-19 occasioned.

11

On appeal, Imperial Charters continues to argue that its business was greatly reduced due to COVID-19.[5] But Imperial Charters' argument that the destruction or deterioration of a thing necessary for performance excused its contractual obligations fails as a matter of law.

Imperial Charters' defense fails because nothing in the insurance contract excused or reduced Imperial Charters' obligation to pay the premiums—not a pandemic, not a downturn in the economy generally, and not a downturn in Imperial Charters' business specifically. *See generally Metrocon Constr. Co. v. Gregory Constr. Co.*, 663 S.W.2d 460, 462 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) ("The contract . . . provides that [the defendant] was under contract to build the wall in question for $203,000. No provision in the contract . . . excuses [the defendant's] performance due to . . . an Act of God . . . . [W]e conclude that an Act of God is not a legal excuse for failure to perform."). Because the policy contained no force majeure clause—that is, a contractual provision allocating the risk of loss if performance became impossible or impracticable, especially as a result of an event that the parties could not have

---

[5]Imperial Charters' reliance on *BB FIT*, a case in which the business in question was legally prohibited from operating, 2023 WL 7401501, at *2, created some confusion over the thrust of Imperial Charters' arguments. But after reviewing Imperial Charters' trial documents and appellate brief, we conclude that it is not arguing that the law had changed and that it was legally prohibited from continuing its business. Instead, it is arguing that the destruction or deterioration of the economy as a whole, or perhaps public transportation specifically, was the impossibility that prevented it from performing its contractual obligations.

anticipated or controlled—Imperial Charters' obligation to perform was absolute.[6] *See Point Energy Partners Permian, LLC v. MRC Permian Co.*, 669 S.W.3d 796, 805 (Tex. 2023). And when an obligation to perform is absolute, the impossibility of performance occurring after the contract was made is no excuse for nonperformance if the impossibility might have reasonably been anticipated and guarded against in the contract. *Huffines v. Swor Sand & Gravel Co.*, 750 S.W.2d 38, 40 (Tex. App.—Fort Worth 1988, no writ); *Metrocon Constr. Co.*, 663 S.W.2d at 462. This is true even though an impossibility may have occurred by virtue of an Act of God or some other circumstance over which the parties had no control. *Metrocon Constr. Co.*, 663 S.W.2d at 462.

Although a global pandemic might not be an occurrence that the parties could have anticipated specifically, a downturn in the economy generally or in Imperial Charters' business specifically was. *See* Restatement (Second) of Contracts § 261 ("The continuation of existing market conditions and of the financial situation of the parties are ordinarily not [a basic assumption on which both parties made the contract], so that mere market shifts or financial inability do not usually effect [a] discharge . . . ."). And simply because a contract is more burdensome to perform than initially anticipated does not excuse its performance. *EM Bldg. Contractors Servs., LLC v. Byrd Bldg. Servs., LLC*, No. 05-19-00153-CV, 2020 WL 4592791, at *14 (Tex.

---

[6]By contrast, the contract in *BB FIT*, the case on which Imperial Charters relied, had a force majeure clause. *Id.*, at *1–2.

App.—Dallas Aug. 11, 2020, no pet.) (mem. op.); *Huffines*, 750 S.W.2d at 40; *Metrocon Constr. Co.*, 663 S.W.2d at 462. Thus, Imperial Charters' affirmative defense failed as a matter of law. *See Brownlee*, 665 S.W.2d at 112.

We hold that the trial court properly granted Redwood's motion for summary judgment on its breach of contract claim and overrule Imperial Charters' first issue.

## B. Redwood's Motion for Summary Judgment on Imperial Charters' Counterclaims

Imperial Charters asserted two counterclaims. The first was an alleged breach of the contractual duty of good faith and fair dealing, and the second was fraud.

### 1. Good Faith and Fair Dealing

As to the first counterclaim, Imperial Charters asserted that Redwood breached its duty of good faith and fair dealing by crediting instead of refunding the "return premiums," which was how Redwood referred to the amounts in an endorsement and a policy cancellation notice.

But as Redwood pointed out in its motion for summary judgment, the duty of good faith and fair dealing does not apply in the context of calculation or collection of premiums. *See Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 302 (Tex. App.—El Paso 1996) ("The concern the good faith and fair dealing cause of action addresses, that unscrupulous insurers might take advantage of an insured's unequal bargaining power in negotiating and settling a claim, does not reach the

purchase transaction or the calculation and payment of premiums."), *aff'd,* 966 S.W.2d 482 (Tex. 1998).

The duty of good faith and fair dealing arises in the context of claims-handling, not the calculation or collection of premiums.  *See Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 148–49 (Tex. 2022); *Garrison Contractors, Inc.*, 927 S.W.2d at 302.  Thus, as a matter of law, Redwood could not breach its duty of good faith and fair dealing in the manner that Imperial Charters alleged.  *See Ward*, 443 S.W.3d at 342.

Accordingly, we hold that the trial court properly rendered summary judgment on Imperial Charters' counterclaim for breach of the duty of good faith and fair dealing.

### 2. Fraud

As to its second counterclaim, Imperial Charters argues that the trial court erroneously granted Redwood's traditional motion for summary judgment on its fraud counterclaim because there was a fact issue that precluded the granting of Redwood's traditional motion for summary judgment.  The trial court, however, granted Redwood's motion for summary judgment on both traditional and no-evidence grounds.  In its brief, Imperial Charters fails to challenge the trial court's granting of Redwood's no-evidence motion for summary judgment.

15

In Redwood's no-evidence motion for summary judgment, it attacked all the elements of Imperial Charters' fraud counterclaim as having no evidentiary support.[7] The trial court granted the no-evidence motion for summary judgment without specifying the ground or grounds upon which it was granted.

When the trial court's judgment rests on more than one independent ground or defense, the complaining party must assign error to each ground or the judgment will be affirmed on the ground to which no complaint is made. *Kritzer v. Kasden*, No. 02-13-00414-CV, 2014 WL 5492219, at *1 (Tex. App.—Fort Worth Oct. 30, 2014, no pet.) (per curiam) (mem. op.) (citing *Scott v. Galusha*, 890 S.W.2d 945, 948 (Tex. App.—Fort Worth 1994, writ denied)). Here, Imperial Charters did not address any no-evidence grounds on appeal. Therefore, we must affirm the summary judgment on the unchallenged grounds. *See Pounders v. Timely Prop. Sols., L.L.C.*, No. 02-22-00395-CV, 2023 WL 3114314, at *2 (Tex. App.—Fort Worth Apr. 27, 2023, no pet.) (mem. op.); *Kritzer*, 2014 WL 5492219, at *2; *see also Leffler v. JP Morgan Chase Bank, N.A.*, 290 S.W.3d 384, 386 (Tex. App.—El Paso 2009, no pet.) ("When a ground upon which summary judgment may have been rendered, whether properly or

---

[7]Redwood identified the elements of fraud as (1) the speaker made a representation to the plaintiff, (2) the representation was material, (3) the representation was false, (4) the speaker knew the representation was false when he made it or he made it recklessly without any knowledge of its truth and as a positive assertion, (5) the speaker made the representation with intent that the other party act upon it, (6) the other party acted in reliance on the misrepresentation, and (7) that party suffered injury thereby. *Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 185 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

16

improperly, is not challenged, the judgment must be affirmed."). Because we can affirm on the basis of Redwood's no-evidence grounds, Imperial Charters' challenge to the granting of a traditional summary judgment is moot. *See* Tex. R. App. P. 47.1; *Woolfolk v. Devore*, No. 02-21-00350-CV, 2022 WL 1420528, at *3 (Tex. App.—Fort Worth May 5, 2022, no pet.) (mem. op.).

We overrule Imperial Charters' second issue.

## V. CONCLUSION

Having overruled both of Imperial Charters' issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: April 3, 2025

17